[L. A. No. 22202. In Bank. May 29, 1952.]

SUBSEQUENT INJURIES FUND OF THE STATE OF CALIFORNIA, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and LOIS A. PATTERSON, Respondents.

Edmund G. Brown, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Petitioner.

Edmund J. Thomas, Jr., Thomas L. Higbee, Reidman & Silverberg and Milton H. Silverberg for Respondents.

### The Issues Involved

SCHAUER, J.—The Subsequent Injuries Fund of the State of California seeks review of an award of the Industrial Accident Commission. The attorney general, for the fund, contends that certain of the provisions of the Labor Code (§§ 4750-4755) for subsequent injury payments violate those provisions of the California Constitution which state that the Legislature has "plenary power" to create a system of workmen's compensation (art. XX, § 21) and forbid gifts of public money (art. IV, § 31). And even if the legislation in question is constitutional, urges the attorney general, the present claim for subsequent injury compensation is barred by the statute of limitations. We have concluded that the contentions on behalf of the fund cannot be sustained.

### History and Substance of the Legislation

The subsequent injuries legislation (Lab. Code, §§ 4750-4755) does not expressly create an independent state agency called the Subsequent Injuries Fund, but in discussing the

problems here presented it will be convenient to refer, as the attorney general, the applicant for compensation and the Industrial Accident Commission have referred, to such a fund as an independent entity. The subsequent injuries plan now under consideration was enacted in 1945 (Stats. 1945, ch. 1161) and, as amended, provides in material part as follows: An employer of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury. (Lab. Code, § 4750.) If an employe who is permanently partially disabled[1] receives a subsequent compensable injury which results in increased permanent partial disability greater than that caused by the last injury alone, and the combined disabilities are 70 per cent or more of total, he is entitled to receive, in addition to the normal compensation for the last injury, compensation for the remainder of the combined permanent disability. (Lab. Code, § 4751.) The Industrial Accident Commission is to fix and award the amount of the last mentioned special additional compensation, and to direct the State Compensation Insurance Fund to pay it out of funds appropriated for the purpose.[2] (Lab. Code, § 4754.) In any "hearing, investigation or proceeding" as to the right to subsequent injury payments, the attorney general (not the attorneys for the State Compensation Insurance Fund) represents the state and "may . . . reimburse himself" for the cost of investigations, medical examinations, etc., out of the Subsequent Injuries Fund. (Lab. Code, § 4753.5.)

The attorney general concedes that the circumstances which resulted in the disability of the applicant-employe (the history of his disability is hereinafter set forth) brought the employe within the terms of the subsequent injuries legislation and, as previously indicated, the argument of the attorney general is devoted to the questions whether the legislation is constitutional and whether the claim for subsequent injury compensation is barred.

Workmen's compensation laws of various states and the federal government contain provisions for additional com-

---

[1] Formerly limited to an employe who was permanently partially disabled by the loss of use of a hand, arm, foot, leg or eye.

[2] Such funds have been appropriated out of "money in the State treasury not otherwise appropriated." (Stats. 1945, ch. 1161, § 5.)

pensation to be paid from a fund (rather than by the employer or his workmen's compensation insurance carrier) to the already handicapped worker who sustains an industrial injury which causes increased permanent disability. The purpose of such subsequent injuries legislation is manifestly sound and, we think, as hereinafter developed in more detail, is encompassed within the purview of the "complete system of workmen's compensation" contemplated by our Constitution. (See footnote 3, *post*, p. 87.) For example, the one-eyed worker who sustains an industrial injury which results in loss of the sight of his remaining eye is in need of more compensation to enable him to rehabilitate himself than is the worker with two good eyes who sustains an industrial injury which results in loss of the sight of one. Yet it seems unfair to place upon the employer who is willing to hire handicapped workmen the burden of furnishing such additional compensation; indeed, in states which have held that the employer of a one-eyed workman is liable for total disability when the workman loses his second eye as a result of an industrial injury, employers as a consequence of such decisions have refused to employ the handicapped. (See *Lawson* v. *Suwannee Fruit & S. S. Co.* (1949), 336 U.S. 198, 202-204 [69 S.Ct. 503, 93 L.Ed. 611]; *Peterson* v. *Halvorson* (1937), 200 Minn. 253 [273 N.W. 812, 813]; *Ruffin* v. *Albright* (1938), 121 N.J.L. 424 [3 A.2d 135]; *Application of Glennon* (1940), 18 N.J.Misc. 196 [12 A.2d 360]; *Special Indem. Fund* v. *Sims* (1945), 196 Okla. 101 [163 P.2d 210, 212]; *Marker* v. *Industrial Com.* (1934), 84 Utah 587 [37 P.2d 785, 98 A.L.R. 722, 725].)

### The Constitutional Questions

The present subsequent injuries legislation (Lab. Code, §§ 4750-4755) is the second attempt of the California Legislature to alleviate the plight of the handicapped workman who sustains an industrial injury resulting in seriously increased permanent disability. In 1929 the 1917 Workmen's Compensation Act was amended (Stats. 1929, ch. 222) to provide for additional compensation to such employes out of a fund to be created in the following manner: when an employe suffered a fatal industrial injury and left no dependent entitled to a death benefit the employer or his compensation insurance carrier was to pay $300 into a subsequent injuries fund. In *Commercial Cas. Ins. Co.* v. *Industrial Acc. Com.* (1930), 211 Cal. 210, 213, 215 [295 P. 11], it was held that a provision of the 1929 legislation which authorized the

Industrial Accident Commission to institute and maintain a proceeding to collect the $300 payments from employers violated section 21 of article XX of the state Constitution;[3] and in *People* v. *Standard Oil Co.* (1933), 132 Cal.App. 563, 572 [23 P.2d 86], it was held that all provisions of the 1929 legislation "which purport to create and enforce a liability upon the part of an employer to provide compensation for workmen not employed by him, are unconstitutional" because violative of section 21 of article XX.[4]  Those cases

---

[3]Cal. Const., art XX, § 21: "The legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death, incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party.  A complete system of workmen's compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical . . . and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; . . . full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without encumbrance of any character; all of which matters are expressly declared to be the social public policy of this state, binding upon all departments of the state government."

[4]It may be noted that there is no federal constitutional objection to such legislation. "Amendments of the New York Workmen's Compensation Law [citation] provide that, when an injury causes the death of an employee leaving no beneficiaries, the employer or other insurance carrier shall pay the State Treasurer $500 for each of two special funds, one to be used in paying additional compensation to employees incurring permanent total disability after partial disability, the other in vocational education of employees so injured as to need rehabilitation, the use of the special funds for these purposes being additional compensation to employees thus injured over and above that prescribed as the payments to be made by their immediate employers.  *Held*:

"(1) That the due process clause of the Fourteenth Amendment does not require that this additional compensation be paid by the immediate employers of the employees to be benefited, nor prevent the legislature from providing for its payment out of general funds created as above described. [Citation.]

"(2) The arrangement does not conflict with the equal protection clause." (*E. E. Sheehan Co.* v. *Shuler* (1924), 265 U.S. 371 [44 S.Ct. 548, 68 L.Ed. 1061], as summarized in headnote.)

are not controlling here. The objection to the subsequent injuries legislation which was there sustained was that it required employers to make payments which would compensate persons who were not and never had been their employes. ▮ The present plan does not contain such a requirement. It imposes liability upon the entire taxpaying public. The attorney general is mistaken in his argument that the Legislature has no power, under section 21 of article XX, to provide for any payments to an injured workman except those by his employer or the employer's insurance carrier. "A complete system of workmen's compensation includes adequate provisions for the . . . *general welfare* of any and *all* workmen . . . to the extent of relieving from the consequences of *any injury . . . sustained by workmen in the course of their employment . . .*" (Cal. Const., art. XX, § 21; italics added.)

▮ It is urged that the subsequent injuries fund plan provides for a gift of public money in violation of section 31 of article IV of the state Constitution. We are of the view, however, that the provision for this fund as a part of a complete system of workmen's compensation does not effect a gift of public money; that it is encompassed within the Legislature's "plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation" (art. XX, § 21). Furthermore, it has been pointed out, the adoption of the constitutional provision concerning workmen's compensation effected a repeal *pro tanto* of state constitutional provisions in conflict therewith (see *Western Indem. Co.* v. *Pillsbury* (1915), 170 Cal. 686, 695 [151 P. 398]) and enabled the Legislature, so far as not limited by article XX, section 21, itself (see *Commercial Cas. Ins. Co.* v. *Industrial Acc. Com.* (1930), *supra,* 211 Cal. 210, 213, 215; *People* v. *Standard Oil Co.* (1933), ·*supra,* 132 Cal.App. 563, 570-572), to provide a complete, workable scheme unhampered by limitations contained in other provisions of the state Constitution (see *Pacific Coast Cas. Co.* v. *Pillsbury* (1915), 171 Cal. 319, 322 [153 P. 24]; *Western Metal Supply Co.* v. *Pillsbury* (1916), 172 Cal. 407, 413 [156 P. 491, Ann.Cas. 1917E 390]).

▮ The attorney general argues that the subsequent injuries benefits should be limited to indigent California residents. But the Legislature has power to require California to bear a portion of the burden placed upon the previously

disabled who are further disabled by injury in California industry, and the question whether such burden should be assumed only in the case of workmen who are needy and who remain in California is for the Legislature. (See *County of Los Angeles* v. *La Fuente* (1942), 20 Cal.2d 870, 876 [129 P.2d 378] ["Whether it is wise to give [old age] benefits to one who has a child willing and able to support him is a question for the Legislature and not for the courts"].)

### The Statute of Limitations

We next consider whether the employe's claim for subsequent injury compensation is barred by any statute of limitations. There is no express statutory provision as to when proceedings to collect subsequent injury compensation must be instituted. The arguments of the parties concerning periods of limitation applicable to such proceedings are hereinafter set forth.

Prior to the time when the employe suffered the subsequent injury for which he claims special compensation, he had sustained an injury which resulted in loss of vision of his left eye, and the attorney general concedes that his condition was one of preexisting permanent partial disability within the meaning of section 4751 of the Labor Code. The ensuing relevant history of this proceeding is as follows:

February 8, 1946: Employe sustained compensable injury to his right eye. Thereafter the employer's insurer paid temporary disability compensation for a time; then an issue arose as to the extent and duration of disability.

August 1, 1946: Employe filed timely application for adjustment of claim against the employer and the employer's insurer.

January 9, 1947: Commission awarded additional temporary disability compensation, found that the employe's condition was not yet stationary and permanent, and expressly reserved jurisdiction to determine extent of permanent disability within 245 weeks[5] from date of injury. At the hearing which resulted in this award the referee orally announced the determination that the Subsequent Injuries Fund should not yet be joined because it was not yet known whether

[5]The continuing jurisdiction of the commission (Lab. Code, §§ 5410, 5803, 5804) which was 245 weeks at the time of the January, 1947, award, was extended to five years by a 1949 amendment of the Labor Code (Stats. 1949, ch. 677).

there would be combined permanent disabilities of 70 per cent of total.

January 24, 1947: Employe filed petition for permanent disability rating.

July 8, 1948: Permanent Disability Rating Bureau made 24 per cent permanent disability rating for the subsequent injury to the right eye alone and 73¾ per cent for the combined disabilities.

January 31, 1950: Commission made findings and award of permanent disability against the employer's insurer in accord with the 24 per cent rating of the bureau.

May 26, 1950: Employe served on the attorney general and filed application for adjustment of claim which joined the Subsequent Injuries Fund as a defendant. This is the first notice which the attorney general had that the employe was claiming subsequent injury compensation.

After a further hearing at which the Subsequent Injuries Fund was represented, the commission determined that the claim for subsequent injury compensation was not barred and (on January 23, 1951) made an award in accord with the 73¾ per cent rating of the bureau.

It is the position of the Subsequent Injuries Fund that the proceedings to collect "compensation for the remainder of the combined permanent disability existing after the last injury" (Lab. Code, § 4751) must be instituted within three years after the occurrence of the last injury. The fund points out that a statute of limitations "runs from the time a cause of action accrues and it invariably accrues when there is a remedy available" (*Irvine* v. *Bossen* (1944), 25 Cal.2d 652, 658 [155 P.2d 9]; *Barlow* v. *City Council of Inglewood* (1948), 32 Cal.2d 688, 694 [197 P.2d 721]); therefore, says the fund, as soon as the previously handicapped employe sustains a further compensable injury he has a cause of action against the fund, even though it may not yet be possible to show that the subsequent injury will cause further permanent disability. And, the fund's argument continues, since there is no express period of limitations, the applicable statute is subdivision 1 of section 338 of the Code of Civil Procedure, the three-year statute which governs "An action upon a liability created by statute, other than a penalty or forfeiture." In other jurisdictions general statutes of limitations similar to subdivision 1 of section 338 have been held applicable to workmen's compensation proceedings, but it appears that the courts which so held were confronted with

the difficult alternative of holding that no statutory period of limitation whatsoever applied to the proceedings. (See *Utah Consol. Mining Co.* v. *Industrial Com.* (1920), 57 Utah 279 [194 P. 657, 16 A.L.R. 458], and cases in annotation, 16 A.L.R. 462; *Federal Rubber Co.* v. *Industrial Com.* (1924), 185 Wis. 299 [201 N.W. 261, 40 A.L.R. 491], and cases in annotation, 40 A.L.R. 495.) We are not confronted with such an alternative.

■ The commission has continuing jurisdiction to amend its awards (Lab. Code, § 5803) but no award can be amended after five years from the date of injury (Lab. Code, § 5804). And section 5410 of the Labor Code provides, ''Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability. The jurisdiction of the commission in such cases shall be a continuing jurisdiction at all times within such period.'' Thus the employe can collect for permanent disability which he discovers within five years even though during the first stages of his injury he received an award or voluntary payments for temporary disability only. (*Henry Cowell L. & C. Co.* v. *Industrial Acc. Com.* (1930), 211 Cal. 154, 161 [294 P. 703, 72 A.L.R. 1118]; *Gobel* v. *Industrial Acc. Com.* (1934), 1 Cal.2d 100, 103 [33 P.2d 413].) The question whether there will be aggravated permanent disability entitling an applicant to relief from the Subsequent Injuries Fund, like the question whether there will be any permanent disability, is one to which the answer may not appear until months after the injury. ■ Thus application of section 5410 to a case such as the present one, appears to be appropriate if such application is not inconsistent with either the policy or the letter of the law. We find nothing in the letter of the law to preclude such application. ■ The policy of the law, enjoined by both statute and precedent, directs that workmen's compensation laws shall be liberally construed in favor of extending their benefits. (Lab. Code, § 3202; *Aetna Life Ins. Co.* v. *Industrial Acc. Com.* (1952), 38 Cal.2d 599, 604 [241 P.2d 530].)

■ The attorney general complains that if he, as representative of the Subsequent Injuries Fund, is not joined until long after the date of the last injury ''it is a practical impossibility'' for the attorney general to acquire information as to the existence and extent of the prior disability, and

that the employe can "have numerous hearings over a period of years to the end that the Subsequent Injuries Fund be made liable without any representation on the part of said Fund until he had conclusively proven to himself that he does qualify." We note also that the attorney general particularly urges that section 5410 "can avail the respondents nothing for said section is limited to the cause of action between the employee and his employer and does not apply to your petitioner . . '. who was not a party." It is true that if section 5410 is applicable to this case then the fund can be joined at any time so long as the proceeding against it (to collect subsequent injury compensation) is commenced within five years from the date of the subsequent injury. The operation of section 5410 is, of course, dependent upon the commencement of a proceeding to collect normal compensation within the time limits prescribed in chapter 2 of part 4 of division IV of the Labor Code. We do not believe that the Subsequent Injuries Fund, even regarded as an entity, must necessarily be also regarded as in the position of an employer. The state having created the fund may prescribe the conditions under which its liability can be established. Questions as to whether the fund should be initially joined in proceedings for normal compensation in order to make section 5410 applicable, like all provisions pertaining to periods of limitation, are peculiarly and primarily for the Legislature. If the attorney general is having difficulty in protecting the fund because of the circumstances appearing here such difficulty, however grave it may be, appears to be one which can be corrected only by the Legislature. We conclude that the disputed claim is covered by section 5410 and is not barred.

For the reasons above stated the award is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.