[Civ. No. 17632.    First Dist., Div. One.    Nov. 18, 1957.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JAMES W. CLUBB et al., Respondents.

Edmund G. Brown, Attorney General, Gerald F. Carreras and Albert W. Harris, Jr., Deputy Attorneys General, for Petitioner.

Everett A. Corten, Daniel C. Murphy, Melvin S. Witt, Charles P. Scully, Lowell A. Airola and Victor Van Bourg for Respondents.

WOOD (Fred B.), J.—On July 27, 1949, the employee was injured by exposure to parathion, a poison used in crop spraying. It was not until June 28, 1955, that he applied to join the state as a defendant, claiming benefits under the Subsequent Injuries Fund for compensation in respect to a preexisting eye condition which limited his vision.

The commission found a permanent disability of 69 per cent due to the spray poisoning (for which the employee had been compensated) and that this disability when added to the preexisting eye disability resulted in a combined permanent disability of 79 per cent. Accordingly, the commission made an award against the state in the sum of $1,200 (less $600 payable to the employee's attorneys) and a life pension of $8.77 a week, beginning May 2, 1956. Upon reconsideration the commission rendered a decision substantially the same in all respects material to the present inquiry.

█ The sole question is whether or not the statute of limitations had run against this claim.

Section 5410 of the Labor Code has been held applicable. (*Subsequent etc. Fund* v. *Industrial Acc. Com.*, 39 Cal.2d 83, 89-92 [244 P.2d 889]; *Sutton* v. *Industrial Acc. Com.*, 46 Cal. 2d 791, 794 [298 P.2d 857]; *Subsequent etc. Fund* v. *Industrial Acc. Com.*, 151 Cal.App.2d 606 [312 P.2d 78].) Section 5410 imposes a five-year limitation, from the date of injury, for an employee to institute proceedings "upon the ground that the original injury has caused new and further disability." This statute, having been invoked by the state, would seem to operate as a complete bar to the employee's application for benefits payable out of the Subsequent Injuries Fund.

In support of its decision the commission invokes subdivision (b) of section 5405 of the Labor Code which allows the commencement of proceedings within one year from "the expiration of any period covered by payment under Article 3 of Chapter 2 of Part 2 of this division" for the "collection

of the benefits provided by Articles 2 or 3, or both, of Chapter 2 of Part 2 of this division.'' A lump sum payment which the employer's carrier made in June, 1955, would, the commission says, cover all of the permanent disability payments, attributable to the spray injury, up to a point of time less than one year prior to the filing of the employee's claim against the state. That lump sum payment was the result of a compromise and settlement between the employee and the insurance carrier. There well might be a question whether it was a ''payment'' that ''covered'' any particular ''period'' of time within the meaning of those terms as used in section 5405, subdivision (b), a question we need not decide.

Articles 2 and 3, mentioned in section 5405, relate respectively to medical and hospital treatment the employer must furnish (§§ 4600-4605) and disability payments he must make (§§ 4650-4663). They do not literally embrace the payments which by article 5 (§§ 4750-4755), later added to the same chapter, the state undertakes to make when an industrial injury results in permanent disability exceeding 70 per cent and is due in part to a ''previous disability or impairment'' (§ 4750). (See the discussion of a similar though not precisely identical problem in *State* v. *Industrial Acc. Com.*, 151 Cal. App.2d 147, 149-150 [311 P.2d 42].)

This is not a mere matter of words of cross-reference. There is good reason for tolling the running of time against a claim for compensation from an employer for medical treatment or for disability payments during the time, if any, that the employer voluntarily furnishes such treatments or makes such payments. He should not be suffered, by rendering such service, to lull the employee into a false sense of security and then, more than a year from the injury, invoke the statute. Such an injustice section 5405 effectively prevents. (See *Bulger* v. *Industrial Acc. Com.*, 218 Cal. 716 [24 P.2d 796]; *J. L. McLaughlin Co.* v. *Industrial Acc. Com.*, 86 Cal.App. 406, 408 [260 P. 829].) This reasoning applies also when the real employer conceals the facts concerning the terms of employment and in procuring another person to furnish the service or make the payments leads the employee to believe that his injuries will be taken care of by the party or parties legally liable. (*Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 66 Cal.App.2d 376, 380-382 [152 P.2d 501].) Similarly, when there are two employers, a general and a special employer, the furnishing of medical service or the making of disability payments by one of them will toll the statute against the other,

under appropriate circumstances. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 26 Cal.2d 278 [158 P.2d 195]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 73 Cal.App.2d 248 [166 P.2d 310].)

This reasoning does not apply to the circumstances of the instant case. No one lulled the employee into a false sense of security for any appreciable period of time. In his application, filed November 21, 1949, he joined the employer and the latter's insurance company,* alleging as the "reason for filing this claim" the fact that on "November 17, 1949, the insurance company advised applicant, they were not furnishing any further medical, or paying any more compensation" and that "applicant is still unable to do any work." At that time less than four months of the five-year statute of limitations had run. At the very most, the paying of compensation or the furnishing of medical treatment for such a period would toll the running of the statute for not more than four months, too short a period to bridge the nearly six-year gap between the date of injury and the date of joinder of the state for the purposes of drawing upon the Subsequent Injuries Fund. It was not until April 28, 1955, that the parties executed the compromise and release, which the referee on June 7, recommended for approval and the commission approved on June 10, 1955. The five-year statute (§ 5410) even if tolled for nearly four months from and after the date of the injury, had already run. It would be stretching the spirit and the letter of the text of section 5405 beyond all reason were we to undertake to make it apply thus retroactively. Moreover, it is quite doubtful if there is such a relation between the state and the employer or his carrier as would make it reasonable to infer from the provisions of section 5405 a legislative intent to toll the statute as against the state if predicated merely upon the furnishing of medical benefits or the payment of compensation by the employer or his insurance carrier. We are leaving undecided the question whether the references to "Article 2" and to "Article 3" (which appear in § 5405) include a reference to article 5 and the Subsequent Injuries Fund.

---

*When he did that, section 5404 blocked the running of the statute of limitations "as to all further claims by such party [the employee] against the defendants therein named [the employer and its insurance carrier] for compensation arising from that injury, and the right to present such further claims is governed by Sections 5803 to 5805, inclusive."

It happens, too, that on the very day that he applied for adjustment of his claim in respect to the spray poisoning the employee filed a separate application against the employer and its carrier in respect to the prior injury, the eye injury. As the reason for the latter, he said, in the application, that he "thought it advisable to present this matter for hearing at same time, for possible adjustment." Quite likely at that very moment, certainly during the hearings which ensued and long before the expiration of the five-year period, the employee must have become aware of facts which put him upon notice that he might have a claim against the Subsequent Injuries Fund. During all of that period the state had no knowledge and no information concerning the possibility of any such claim. Under these circumstances it would seem highly inequitable to stretch the statutes, as the respondent commission would have us stretch them, to toll the running of the statute against this claim.

The employee makes a somewhat different approach to the problem than does the commission. He argues, in effect, that section 5410 does not apply because in this case his claim against the state was not filed until after the lapse of five years. That, we think, is an obvious *non sequitur*. He then argues that sections 5803 and 5804 of the Labor Code are inapplicable because, as against the state, he is not requesting that a prior award be altered. That is correct. Incidentally, no party to this proceeding claims that either of those sections applies. Finally, he says that "since neither Section 5410 nor Sections 5803 and 5804 are applicable here, the only applicable provision is Section 5405, which provides that if a claim is filed within one year from the time of the last payment of benefits, then the claim is a timely one." That is essentially the same position which the respondent commission takes, one which we have found untenable.

We conclude that the facts of this case do not present an exception to the general rule that section 5410 applies and that proceedings against the state for payments from the Subsequent Injuries Fund must be instituted within five years from the date of injury.

The award is annulled.

Peters, P. J., and Bray, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 15, 1958. Carter, J., was of the opinion that the petition should be granted.