[L.A. No. 29639. In Bank. Feb. 26, 1970.]

SUBSEQUENT INJURIES FUND, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
HELEN L. TALCOTT, Respondents.

## Counsel

Thomas C. Lynch, Attorney General, Harold B. Haas, Assistant Attorney General, William L. Zessar and Jerold A. Prod, Deputy Attorneys General, for Petitioner.

Everett A. Corten, Sheldon M. Ziff, Nathan Mudge and Robert C. Kunz for Respondents.

## OPINION

**MOSK, J.**—The question we are called upon to determine is whether Helen L. Talcott (hereinafter called respondent) is barred from recovering benefits from the Subsequent Injuries Fund (hereinafter the Fund) because she filed an application for compensation benefits against her employer within one year after the date of her injury but failed to proceed against the Fund within five years of that date.

Section 4750 of the Labor Code[1] provides that if a workman who has a permanent physical impairment later sustains a compensable injury resulting in permanent disability, the employer is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury. Section 4751 provides, "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article; provided, that either (a) the previous disability or impairment affected a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member, and such latter permanent disability, when considered alone . . . is equal to 5 percent or more of total, or (b) the permanent disability resulting from the subsequent injury . . . is equal to 35 percent or more of total." The payment for the combined disability is made by the Fund. (*Subsequent etc. Fund* v. *Ind. Acc. Com.* (*Patterson*) (1952) 39 Cal.2d 83, 84-85 [244 P.2d 889].)

There are no statutes of limitations applicable specifically to proceedings against the Fund but this lacuna has been filled by decisional law. It has been said that the limitations applicable to proceedings against the Fund are the same as those against the employer. (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (*Ferguson*) (1960) 178 Cal.App.2d 55, 58 [2 Cal. Rptr. 646].)

Section 5405 provides that proceedings for the collection of medical and disability payments must be filed within one year from (a) the date of

---

[1]All references will be to the Labor Code unless otherwise noted.

injury, (b) the payment of disability benefits by the employer or its carrier or (c) the last furnishing of medical or hospital payments by the employer or its carrier.

Section 5410, insofar as relevant here, provides, "Nothing in this chapter shall bar the right of an injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability. The jurisdiction of the appeals board in such cases shall be a continuing jurisdiction at all times within such period."

Respondent sustained an injury to her right leg on August 2, 1960, when she slipped and fell at her place of employment. Prior to that time she had an impairment in the use of her right leg due to tuberculosis in her knee as a child, a slight disability of her right wrist, and she had a breast removed. On November 1, 1960, she filed a claim against her employer and on May 12, 1961, an award for temporary disability and medical treatment was issued by the Industrial Accident Commission (now the Workmen's Compensation Appeals Board, hereinafter the Board). Jurisdiction to determine permanent disability was reserved because her disability had not yet become permanent. Liability under this award was terminated on February 4, 1963, as of October 31, 1962. However, the carrier continued to furnish medical treatment and voluntarily resumed temporary disability payments which were regularly forthcoming until August 2, 1965, five years after the injury. (§ 4656.) The carrier then began to make permanent disability payments, although there had been no adjudication of permanent disability.

On July 17, 1963, respondent requested a hearing on the issue of "disability" but hearings were postponed by stipulation of the parties until April 1966. An award for permanent disability was issued on June 23, 1966, more than five years after the date of injury. The referee found a 64½ percent disability rating after apportionment. That is, respondent's actual disability was higher than the 64½ percent allotted by the referee but a portion of the total disability (15 percent) was attributed to the prior impairment of respondent's right leg.[2]

On July 29, 1966, about five weeks after the existence and extent of respondent's permanent disability had been determined, she filed an amended application seeking benefits from the Fund. This was more than five years after the 1960 injury (§ 5410) but within a year of the time the employer's carrier had paid compensation benefits (§ 5405). She alleged that as a result of the 1960 injury she had suffered a permanent disability

---

[2]As it ultimately developed, her prior disability was also held to result from the antecedent wrist impairment and the removal of her breast.

in her right leg of over 40 percent, that prior thereto she had been suffering from a permanent disability in the same extremity, and that the combined disability resulting from the industrial injury and the previous impairment was 70 percent or more.

The Board found that the application against the Fund was timely filed under section 5405 and it issued an award for subsequent injuries benefits. The Board reasoned that since the right to benefits from the Fund does not arise until it appears "or, perhaps is found," that an applicant will meet the requirements of section 4751, the liability of the Fund could not be determined prior to such time and respondent should not be compelled to file her application before then.

The Fund insists that section 5410 is the applicable statute of limitations. According to the Fund, the cases have developed the following rules:

(1) If an applicant has invoked the jurisdiction of the board by filing a claim for normal compensation benefits against his employer within the time limits specified in section 5405, any claim against the Fund must be filed within five years of the date of injury as required by section 5410. (Citing *Subsequent etc. Fund* v. *Ind. Acc. Com. (Patterson) supra,* 39 Cal.2d 83; *State of Cal.* v. *Industrial Acc. Com. (Clubb)* (1957) 155 Cal. App.2d 288 [318 P.2d 34]; *Subsequent Injuries Fund* v. *I.A.C. (Pranzitelli)* (1957) 151 Cal.App.2d 606 [312 P.2d 78].) (2) If the applicant has not previously filed for compensation with the board against his employer his claim against the Fund is treated as an original claim for disability and is timely if filed within the limitations set forth in section 5405, even if more than five years has elapsed since the injury. (Citing *State of California* v. *Ind. Acc. Com. (Busch)* (1962) 198 Cal.App.2d 818 [18 Cal.Rptr. 458]; *Subsequent Injuries Fund* v. *Industrial Acc. Com. (Ferguson) supra,* 178 Cal.App.2d 55.)

Since respondent here had filed an application for benefits from her employer within the time limits set forth in section 5405, argues the Fund, the proceeding against the Fund invokes the continuing jurisdiction of the Board and is barred under section 5410 because not filed within five years of the date of injury.

We examine this perplexing question in the light of procedures applicable to workmen's compensation claimants. The pattern which evolved in the present case is not uncommon. An employee files for compensation benefits against his employer and its insurance carrier within the time limitations specified in section 5405 and a temporary award follows or the carrier voluntarily pays compensation. The question of permanent disability resulting from an injury cannot be determined until the applicant's physical condition has become stable and this frequently occurs many months and

occasionally years after occurrence of the original injury. Indeed, the determination of whether permanent disability has resulted and, if so, its extent, may not be made until more than five years from the date of injury, as was the situation here. Absent such a determination an applicant cannot be certain that he will be entitled to any benefits from the Fund.

▮ The applicant may obtain benefits from the Fund on the ground that the combination of his prior disability and the disability resulting from the subsequent injury is greater than that which would have resulted from the subsequent injury alone even though he was unaware of the existence of a prior disability before he brings the compensation proceeding to collect benefits for the subsequent injury. In *Subsequent Injuries Fund* v. *Industrial Acc. Com. (Allen)* (1961) 56 Cal.2d 842, 846 [17 Cal.Rptr. 144, 366 P.2d 496], it was held that a prior hearing loss, the actual existence of which was shown by the tests of examining doctors, rendered the applicant permanently partially disabled for the purpose of an award against the Fund even though at the time of the subsequent injury the applicant was not aware that he was suffering from a hearing disability. Parenthetically we note at this point, and it is of considerable significance, that the prior disability need not be industrial in origin and will frequently not have been the subject of a prior disability rating. In the instant case, although respondent must have been aware of her prior disabilities, she alleges that she had no way of knowing before the Board issued its award for permanent disability whether a portion of her total disability after the 1960 industrial injury would be attributed to these prior conditions.[3] Finally, of course, not until after determination of permanent disability will an applicant know whether his total disability rating will be 70 percent or more, whether the subsequent injury, considered alone, caused 35 percent or more of the total disability or whether he can meet the other requirements set forth in section 4751 in order to recover subsequent injuries benefits.

It is apparent that if an applicant must bring an action against the Fund within five years from the date of injury under section 5410 whenever he has filed an application for normal compensation benefits against his employer under section 5405 he may lose his cause of action even before the Board is able to determine the facts upon which the Fund's liability is predicated, although he may have no knowledge of the existence of a prior disability or its extent.

With the foregoing prelude, we turn to the authorities relied upon by the Fund. The first case to face the problem of the absence of limitation periods in proceedings against the Fund was *Subsequent etc. Fund* v.

---

[3] As we shall see, the Fund challenges this assertion.

*Ind. Acc. Com. (Patterson) supra,* 39 Cal.2d 83. There the applicant, who had a prior impairment, suffered an industrial injury in 1946. In 1950 she was granted a combined permanent disability rating in excess of that required for benefits from the Fund and only a portion of the total disability was attributed to the 1946 injury. Later in that year she filed an application for benefits against the Fund, which maintained that since no limitation period was provided by statute for proceedings against it, the applicable period was the three-year limit set forth in the Code of Civil Procedure for actions upon liabilities created by statute. (Code Civ. Proc., § 338, subd. (1).)

The court held section 5410 applicable, reasoning that it was "appropriate" to do so because, inter alia, the question whether an applicant can qualify for benefits from the Fund may not appear until months after the injury. It was also stated that, in order to invoke section 5410 against the Fund, the applicant must have previously commenced proceedings for normal compensation under section 5405 and that "if section 5410 is applicable to this case then the fund can be joined at any time so long as the proceeding against it . . . is commenced within five years from the date of the subsequent injury." (39 Cal.2d at p. 92.)

*State of Cal. v. Industrial Acc. Com. (Clubb) supra,* 155 Cal. App.2d 288 is another case which applied the limitation period of section 5410 to a claim against the Fund. There, too, the applicant filed a claim against the employer pursuant to the provisions of section 5405. A compromise and release between the carrier and the applicant was approved by the Industrial Accident Commission more than five years after the date of injury and thereafter the applicant filed a claim against the Fund.

The court there held the appropriate statute of limitations was section 5410. It reasoned that subdivisions (b) and (c) of section 5405 are not applicable to proceedings against the Fund because the purpose of those subdivisions was to avoid a circumstance in which an applicant, who had failed to file a claim against his employer until the one-year period of section 5405, subdivision (a), had elapsed, had been lulled into a false sense of security by the fact that his employer had voluntarily furnished him with compensation or medical payments. However, stated the court, this reasoning did not apply to an employee who had sought benefits against the employer because in that situation the employee had not been misled to his detriment and, moreover, it was doubtful that the payment of compensation benefits by the employer could be said to toll the statute of limitations against the Fund. The court also held that under the facts there it was quite likely that the employee knew long before the five-year period had elapsed that he might have a subsequent injuries claim. (See

also *Subsequent Injuries Fund* v. *I.A.C.* (*Pranzitelli*) *supra,* 151 Cal. App.2d 606.)

The first application of section 5405 as a statute of limitations against the Fund occurred in *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (*Ferguson*) *supra,* 178 Cal.App.2d 55. In *Ferguson* the applicant had been voluntarily furnished medical benefits by his employer's carrier until more than five years after his subsequent injury and had filed no application against his employer. The court held that under these circumstances an application against the Fund filed more than five years after the injury but within a year after the last furnishing of benefits was timely filed under section 5405, subdivision (c).

It distinguished the section 5410 decisions cited above in this manner: the cases applying section 5410 are based upon the proposition that if a claim against the Fund is made after the employee has applied for benefits against the employer, the application for benefits from the Fund is for a "new and further disability" under section 5410. But if a proceeding is brought for the first time before the commission and the claim is timely filed against the employer under section 5405, subdivision (b) or (c), such a claim cannot be viewed as one for "new and further disability" under section 5410 but is a claim for *the* disability. The court expressed its belief that the Legislature intended that "where section 5410 does not apply because no application against the employer has been made within the time therein specified, the employee's time to file against the fund is commensurate with his time to file against the employer." (178 Cal.App.2d at p. 60.)

In justifying the distinction between the two situations the opinion states that if the applicant has filed a proceeding against the employer he has "invoked a determination by the commission of the question of his disability, and having done so there is no reason why he should not ask the commission to determine not only the extent of that disability but by whom it is to be compensated." However, where no application for benefits has been filed against the employer but compensation or medical payments have been made by the employer or its carrier the applicant "is given the right to delay asking the commission to determine the extent of his disability until within one year after the cessation of medical treatment, and it follows that his right to have the question of who is to compensate him for that disability must necessarily be delayed likewise." (178 Cal.App.2d at pp. 60-61.) This holding and the reasoning underlying it were affirmed in *State of California* v. *Ind. Acc. Com.* (*Busch*) *supra,* 198 Cal.App.2d 818, in which no application for normal benefits had been filed against the employer, who had voluntarily furnished disability benefits and medical treatments. Within one year of the time such benefits ceased but more than

five years after the date of injury, the employee filed an application for benefits against both his employer and the Fund and it was held that the action against the Fund was timely under section 5405, subdivision (b), although filed more than five years from the date of injury.

There is no doubt that if we rely upon the reasoning of *Ferguson* and *Busch* respondent here is barred. However, some of the rationale of those cases is open to question. For example, they declare as justification for the statement that an applicant who has filed for normal benefits against his employer must bring a proceeding against the Fund within five years of his injury under section 5410 that, since the applicant has invoked a determination by the board regarding his disability in the proceeding against the employer, he should also be required to seek a determination as to who should compensate him for his disability. ■ This concept falls, however, because there is no statutory requirement that the proceedings against the employer and the Fund must be heard simultaneously. Indeed, the two proceedings may be and frequently are brought several years apart; yet under the rule of any of the above cases they are timely filed so long as they are brought within five years of the date of injury.

We should, in the absence of statutory direction and to avoid an injustice, prevent the barring of an applicant's claim against the Fund before it arises. ■ Therefore, we hold that where, prior to the expiration of five years from the date of injury, an applicant does not know and could not reasonably be deemed to know that there will be substantial likelihood he will become entitled to subsequent injuries benefits, his application against the Fund will not be barred—even if he has applied for normal benefits against his employer—if he files a proceeding against the Fund within a reasonable time after he learns from the board's findings on the issue of permanent disability that the Fund has probable liability.

This rule is in keeping with the doctrine that limitations provisions in the workmen's compensation law must be liberally construed in favor of employees unless otherwise compelled by the language of the statute and that statutes of limitations should not be interpreted in a manner resulting in a right being lost before it accrues. (*Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 577 [68 Cal.Rptr. 164, 440 P.2d 236].)

If the Fund's contentions are upheld not only would an applicant be forever barred from subsequent injuries benefits through no fault of his own but the Board could be severely burdened in carrying out its duties. ■ Out of an excess of caution, future applicants would be well advised to join the Fund with the employer in every proceeding seeking permanent disability benefits on the remote possibility that some unknown prior disabling condition will be discovered entitling them to benefits from the

Fund or a known prior condition might be held to have contributed to the total disability even though a reasonable person would believe otherwise.

The Fund asserts that the rule set forth above will severely prejudice its interests. It is claimed that if an applicant may bring a proceeding against the Fund after the Board has already determined the extent of the applicant's disability in the proceeding brought against the employer, the Fund will have great difficulty in convincing the Board in a subsequent proceeding that the applicant's overall disability and disability attributable to the industrial injury is less than the percentage arrived at in the determination against the employer. However, if there is a problem it exists independently of any resolution of the matter involved here because, as stated above, there is no statutory requirement that the proceeding against the employer for permanent disability and the claim against the Fund be heard simultaneously.

Another suggestion of the Fund is that our holding here could have implications for employers since, assertedly, it would mean that an applicant, discovering long after the five-year period set forth in section 5410 had expired that he had a new and further disability stemming from an industrial injury, would have an unlimited time in which to file a petition to reopen a proceeding against his employer in the event lifetime benefits were afforded. There is no validity to that apprehension. The limitation periods applicable to claims against an employer are specified by statute and are well settled by case law. Our holding here is not intended to and will not apply to proceedings brought against employers under the workmen's compensation law.

Finally, the Fund claims that respondent must have known of the Fund's potential liability within five years of the time she was injured because she was aware of the existence of her prior disabilities, she walked with a slight limp prior to her injury, and one doctor reported that she was grossly crippled and would probably not have broken her leg when she fell if it had been normal. We cannot now decide that these factual elements compel the conclusion that respondent must reasonably have been deemed to know prior to August 2, 1965 (five years from the date of her injury) that there was a substantial likelihood she would become entitled to subsequent injuries benefits. The Board should resolve this factual issue in the first instance and the case must be remanded to it for this purpose. Respondent filed her claim against the Fund within five weeks after she learned of her permanent disability rating, and there is no contention that the period between the permanent disability award and the filing of her application for subsequent injuries benefits was unreasonable.

Neither *Patterson* nor *Clubb* are expressly contrary to the rule set forth above. *Patterson* did not consider the question whether there should be

an exception to the application of the five-year period in section 5410 in a situation in which the applicant neither knew nor should have known of the Fund's probable liability within that time. It did recognize, however, that the question of entitlement to subsequent injuries benefits might not become evident for some time after an injury and held that it was "appropriate" in that case to apply section 5410. We find the *Clubb* opinion difficult to categorize. Some of its reasoning is directed to the proposition, rejected in both *Ferguson* and *Busch,* that a claim against the Fund cannot be governed by section 5405. Furthermore, in holding section 5410 to be applicable, it is stated that the employee must have been aware long before the expiration of five years from the date of his injury that he had a claim against the Fund. When viewed in the light of this conclusion, the decision is not in conflict with the rule adopted here.

▆ While the ultimate decisions of *Ferguson* and *Busch* are not inconsistent with our decision, some of their language cannot be reconciled with the views we have expressed here, and to that extent those cases are disapproved.

The decision of the Board is annulled and the cause is remanded to the Board for further proceedings consistent with the views expressed herein.

Tobriner, Acting C. J., McComb, J., Peters, J., and Burke, J., concurred.

**SULLIVAN, J.**—I dissent. The majority pay lip service to the rules prescribing the time limitations within which proceedings for the recovery of compensation benefits from the Subsequent Injuries Fund (Fund) may be commenced but forthwith disavow them because they produce what the majority apparently deem an infelicitous result in the case at hand. Unfortunately, statutes of limitation, by their very nature and purpose, have this disconcerting effect. I would not find this disposition of the matter by the majority so objectionable if it were compelled because the existing rules were glaringly unsound or the suggested ones extraordinarily superior. But the majority discard rules which have been carefully fashioned over the last two decades by this court and the Court of Appeal and are crystallized in the five opinions[1] which the majority summarize. Indeed,

---

[1]*Subsequent etc. Fund* v. *Ind. Acc. Com. (Patterson)* (1952) 39 Cal.2d 83 [244 P.2d 889]; *Subsequent Injuries Fund* v. *I.A.C. (Pranzitelli)* (1957) 151 Cal.App.2d 606 [312 P.2d 78]; *State of Cal.* v. *Industrial Acc. Com. (Clubb)* (1957) 155 Cal. App.2d 288 [318 P.2d 34]; *Subsequent Injuries Fund* v. *Ind. Acc. Com. (Ferguson)* (1960) 178 Cal.App.2d 55 [2 Cal.Rptr. 646]; *State of California* v. *Ind. Acc. Com. (Busch)* (1962) 198 Cal.App.2d 818 [18 Cal.Rptr. 458].

none of the parties in this case have at any time discussed, let alone urged, the rule which the majority now gratuitously proclaim.

These five cases were the unanimous decisions of this court (*Patterson*) and of the Court of Appeal (*Pranzitelli, Clubb, Ferguson* and *Busch*); in each of the last four cases a hearing was denied by this court.[2] In the place of these definite and well-reasoned rules, the majority now propose a vague and obviously expandable formula permitting a claimant to seek recovery of subsequent injuries benefits "if he files a proceeding against the Fund within a reasonable time after he learns from the board's findings on the issue of permanent disability that the Fund has probable liability." The rule of limitations thus devised by the majority instead of specifying definite and precise time periods in the normal format of statutes of limitations appears as a judicial mechanism of vague and indistinct contours which exposes the Fund and indirectly the State Treasury (see Lab. Code, §§ 4754-4755)[3] to claims for benefits presented in what may be considered to be from case to case by the particular administrative trier of fact "a reasonable time." To discard the existing rules for such a device is indeed an unwarranted sacrifice.

It seems to me that the basic defect in the majority's position is their assumption that since "[t]here are no statutes of limitations applicable specifically to proceedings against the Fund" the majority have some free play to devise solutions "to avoid an injustice." In the context of such a rationale the assumed "absence of statutory direction" is the key to the doors of the Fund. In the first place, it is nothing new that there is no statute in the Labor Code *expressly* prescribing a time period for proceedings against the Fund. As the majority themselves acknowledge, this deficiency has been cured by decisional law which has applied to such proceedings statutes of limitations already contained in the workmen's compensation law (§§ 5405, 5410). These statutes, unlike the rule now promulgated in the instant case, specify precise time periods and are properly coordinated with concepts of jurisdiction basic to all proceedings for workmen's compensation benefits. It is not accurate then to posit an "absence of statutory direction"; under the guidance of decisional law, there *is* statutory direction in the above sections of the Labor Code.

The courts, therefore, in the five pivotal cases already referred to (see fn. 1, *ante*), as well as in their progeny, have carefully and logically established within the framework of the compensation statutes, the roles of sections 5405 and 5410 as statutes of limitations for claims against the

---

[2]It is noteworthy that all four decisions of the Court of Appeal are from the First Appellate District, Division One, although the composition of the court varied.

[3]Hereafter, unless otherwise indicated, all section references are to the Labor Code.

Fund. I think what the majority lose sight of is that proceedings for subsequent injuries benefits are not an isolated remedy but an integral ,part of the injured workman's claim for benefits. His application may seek three different types of benefits provided for in chapter 2 of part 2 of division 4 of the Labor Code: (1) medical and hospital treatment (art. 2 of ch. 2, §§ 4600-4605); (2) disability payments (art. 3 of ch. 2, §§ 4650-4663); and (3) subsequent injuries payments (art. 5 of ch. 2, §§ 4750-4755). The first two categories of benefits are furnished and paid for by the employer; the third from a public fund. (§ 4754, see *Busch, supra,* 198 Cal.App.2d at p. 821.) Thus it made good sense for this court in *Patterson* to hold that proceedings for benefits from the Fund were "dependent upon the commencement of a proceeding to collect normal compensation within the time limits prescribed in . . . the Labor Code," (39 Cal.2d at p. 92; see § 4751) and that the application of section 5410 as a statute of limitations on the commencement of proceedings against the Fund was appropriate under the facts of that case. Similarly, it made good sense to hold in *Ferguson* that it was intended "to gear the employee's right to a benefit from the fund to a proper proceeding against the employer, . . ." (178 Cal.App.2d at p. 59) and that the application of section 5405 as a statute of limitations was appropriate under the facts of *that* case. What I emphasize is that the courts have skillfully applied existing statutes of limitations already in the Labor Code to proceedings against the Fund and have produced a harmonious scheme in which specific and definite time periods are made applicable to claims for *all* benefits sought by the injured employee.

The above rules of limitation also preserve an internal consistency with the basic concepts of jurisdiction which control all proceedings before the Board. Thus, as the majority properly acknowledge, if the injured employee *has not* previously filed an application for normal compensation, section 5405 applies and his claim for normal compensation and for subsequent injuries benefits *invokes the original jurisdiction* of the Board. If his claim for normal compensation is timely filed under section 5405, his claim for Fund benefits being geared to it, is also timely filed. (See *Ferguson, supra; Busch, supra.*) If, however, the employee *has* previously filed an application for normal compensation, his subsequent claim for Fund benefits invokes *the continuing jurisdiction* of the Board, section 5410 applies and proceedings for subsequent injuries payments must be *commenced* within five years after the date of injury. (See *Patterson, supra; Pranzitelli, supra; Clubb, supra.*)

Each of the above rules is grounded upon a recognition of the Board's jurisdictional period of five years. In the first situation, section 5405 governs because the *original* rather than the *continuing* jurisdiction of the Board is invoked. Hence, if timely within section 5405, proceedings against the

Fund can be commenced even though the claim is filed more than five years after the date of the industrial injury. If the time period of one year is reasonable for proceedings for normal compensation, surely it would also appear to be reasonable for Fund benefits. In the second situation, section 5410 governs because the *original* jurisdiction of the Board has already been invoked and the five-year jurisdictional period so well known for many years in workmen's compensation law (see § 5804)[4] has commenced. In such a situation a claimant for subsequent injuries benefits must invoke the *continuing* jurisdiction of the Board. In doing this he is placed in no more onerous a position than when he institutes proceedings for compensation "upon the ground that the original injury has caused new and further disability." (§ 5410.) If the time period of *five* years is reasonable for such last described proceedings (indeed it has withstood challenge these many years) surely it would also appear to be reasonable for subsequent injuries proceedings.

In sum, these rules are neither uncertain nor unworkable, neither esoteric nor Procrustean. They are evolved out of the material of the workmen's compensation laws themselves, utilizing existing statutes of limitations in an intelligent way, and harmonizing them with the overall scheme and purpose of the compensation laws. They are recognized by eminent authorities in the field (see 1 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed.) § 9.05(4)(d), and by the bar (see California Workmen's Compensation Practice (Cont.Ed.Bar 1963) § 5.13).

I can find no reason to tinker with these carefully developed rules in order to reach a desired result in a particular case. Nor can I perceive any necessity to disturb them with an innovation which none of the parties have urged. The main justification proffered by the majority for doing so seems to be a concern for applicants who, as in the instant case, presumably discover the extent of their disability only after the expiration of the five-year period. But the five-year period is of reasonable length, has been in the law for many years,[5] and has commanded the vigilance of applicants and their counsel[6] during all of this time. I cannot see why five years is not

---

[4]Section 5804 provides in pertinent part: "No award of compensation shall be rescinded, altered, or amended *after five years* from the date of the injury except upon a petition by a party in interest filed *within such five years* and any counter-petition seeking other relief filed by the adverse party within 30 days of the original petition raising issues in addition to those raised by such original petition. . . ." (Italics added.)

[5]Prior to 1949, the period was 245 weeks or 15 weeks *less* than five years. (Stats. 1949, ch. 677, p. 1174, §§ 1 and 2).

[6]In the instant case, although applicant filed her application in propria persona on November 1, 1960, she appointed counsel on January 21, 1961, and thereafter had counsel at all times throughout the proceedings.

a sufficient period of time for any applicant of reasonable diligence at least to *commence* proceedings.

The majority, seemingly forgetful of the historic use of a five-year (and previously a 245-week) jurisdictional period in the Board's proceedings and even giving the impression of telescoping this period into an interval shorter than it actually is, view the result of enforcing section 5410 as the barring of an applicant "from subsequent injuries benefits through no fault of his own . . . ." This view might be persuasive in some instances if an applicant were required to *prove* his claim within the five-year period. But he is merely required to *file* his *claim* for Fund benefits within that period. Section 5410, unlike section 5804 (see fn. 4, *ante*), does not deprive the Board of jurisdiction after the expiration of the statutory period. Once the Fund has been timely joined the Board has continuing jurisdiction over the claim, and may make an award even after the expiration of the five-year period. I fail to see how the majority can absolve from all fault an applicant whose counsel, aware of the law governing payments from the Subsequent Injuries Fund, permits a five-year period to elapse without completing the relatively simple procedure required to file a claim. (See California Workmen's Compensation Practice, *op. cit.,* § 16.32 for forms and procedure.)

It is convenient to note at this point the majority's concern that if the Fund's assertion of the statute of limitations is upheld, "the Board could be severely burdened in carrying out its duties" because applicants out of an excess of caution will join the Fund with the employer in every proceeding for permanent disability. Although the rules of limitation declared in the five cases referred to earlier (see fn. 1, *ante*) have been operative for some time, no indication has been given us that this has occurred to date. If it should occur (which I doubt) I fail to see how any of the interested parties would be prejudiced. Indeed, at oral argument, counsel for the Fund indicated that he would prefer such joinder. Certainly, once the Fund had been joined any burden on the Board could be lessened by continuing the proceeding against the Fund. In any event, the claims against the Fund would be filed (although they would not have to be proved) within the definite time periods of existing statutes of limitation. I fail to see how this spectre of routine filing can be a decisive factor in this case.

The record in the instant case discloses the following: On August 2, 1960, the applicant sustained an industrial injury. On November 1, 1960, she filed, in propria persona, her claim for normal compensation. On January 21, 1961, she retained attorneys who thereafter represented her throughout the proceedings. The five-year period prescribed by section 5410 did not expire until August 2, 1965. On May 12, 1961, the Board awarded her temporary total disability beginning August 3, 1960, to and including March 17, 1961,

and continuing thereafter until further order and retained jurisdiction to determine the extent of permanent disability "upon the request of any party in interest."

Thereafter the matter was set down for hearing for October 15, 1963, to determine the issue of disability; it was then continued to January 14, 1964.[7] On January 29, 1964, pursuant to written stipulation of counsel for all parties the matter was ordered off calendar "subject to being reset, after notice, upon request of any of the parties hereto." *Not until two years later,* on January 24, 1966, and *after the expiration of the five-year jurisdictional period,* was there any activity in the matter at which time applicant's counsel requested that the matter be set for hearing, stating: "The issues will include temporary disability, permanent disability, and need for life-time medical treatment." Even at that date, no mention is made of subsequent injuries benefits. Not until July 29, 1966, *almost one year after the expiration* of the five-year period, did applicant file an amended application for subsequent injuries benefits.

On January 15, 1964, when applicant through her counsel stipulated that the matter could be taken off calendar all of the five pivotal cases (*Patterson, Pranzitelli, Clubb, Ferguson* and *Busch,* see fn. 1, *ante*) had already been decided. The first three clearly and thoroughly declared that where as here an application for normal compensation had already been filed, the time within which to apply for subsequent injuries benefits was that prescribed by section 5410, namely within five years of the date of injury. Applicant and her counsel are presumed to know this limitation and, of course, are presumed to know that up to that point no claim for such benefits has been made. More important, as the majority themselves state, applicant "must have been aware of her prior disabilities, . . ."

In sum, I cannot find any substantial reason, much less a compelling necessity, for jettisoning the statutes of limitations made applicable by now settled decisional law to claims for subsequent injuries benefits, which statutes are part of the workmen's compensation laws of this state, prescribe clear and definite time periods and have been found workable for many years. I can apprehend no reason at all for replacing such rules of limitation with the vague formula gratuitously conceived by the majority which exposes the Subsequent Injuries Fund and the State Treasury to claims at the whim of a "reasonable time" formula. Finally, even were I to contemplate an exception to the rules, I would not find an acceptable vehicle in the instant case where the applicant has exhibited no vigilance in respect to a five-year jurisdictional period of which she should have been well aware.

---

[7]It is significant that the printed notices of hearing to all parties contain the following: "NOTE, CONTINUANCES AND FURTHER HEARINGS ARE NOT FAVORED."

I would annul the award upon the ground that the applicant's claim for subsequent injuries benefits was barred by the provisions of section 5410 of the Labor Code.

Petitioner's application for a rehearing was denied March 25, 1970. Sullivan, J., was of the opinion that the petition should be granted.