Filed 8/11/11

# IN THE SUPREME COURT OF CALIFORNIA

CHRISTINE BAKER, as Administrator, etc.,

        Petitioner,

        v.

WORKERS' COMPENSATION APPEALS BOARD and X.S.,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)

S179194

Ct.App. 6  H034040

WCAB Case No.
ADJ1510738/SJO 0251902

In this case we construe Labor Code[1] section 4659, subdivision (c) (section 4659(c), or subdivision (c)), which provides for the annual indexing of two categories of workers' compensation benefits—total permanent disability and life pension payments—to yearly increases in the state's average weekly wage (SAWW), so that lifetime disability payments made to the most seriously injured workers will keep pace with inflation.  The indexing procedure is sometimes referred to as an "escalator," or one providing for "cost of living adjustments" (COLA's).

Permanent disability and life pension benefits are intended to compensate the injured worker for the long-term, residual effects of an industrial injury once the worker has attained maximum medical recovery.  (*Department of*

---

[1]      All further statutory references are to the Labor Code unless otherwise specified.

1

*Rehabilitation v. Workers' Compensation Appeals Board* (2003) 30 Cal.4th 1281, 1291 (*Department of Rehabilitation*).) Total permanent disability benefits are weekly payments made for life to injured workers who are 100 percent disabled. (§ 4659, subd. (b).) They commence on the date the injured worker reaches a medically stable condition (permanent and stationary) because, at that point, the full nature and extent of the worker's permanent disability, if any, can be determined. (*Department of Rehabilitation, supra,* 30 Cal.4th at p. 1292.) Life pensions are a form of supplemental *partial* permanent disability benefit, consisting of payments to a subclass of seriously injured workers, i.e., those whose "permanent disability is at least 70 percent, but less than 100 percent." (§ 4659, subd. (a).) Life pension payments commence once the worker's partial permanent disability payments have been exhausted, and thereafter continue weekly for life. (*Ibid.*)

Section 4659(c) provides, in full, "For injuries occurring on or after January 1, 2003, an employee who becomes entitled to receive a life pension or total permanent disability indemnity as set forth in subdivisions (a) and (b) shall have that payment increased annually commencing on January 1, 2004, and each January 1 thereafter, by an amount equal to the percentage increase in the 'state average weekly wage' as compared to the prior year. For purposes of this subdivision, 'state average weekly wage' means the average weekly wage paid by employers to employees covered by unemployment insurance as reported by the United States Department of Labor for California for the 12 months ending March 31 of the calendar year preceding the year in which the injury occurred." (§ 4659(c).)

We must determine whether the operative language of subdivision (c) requires the annual COLA's for total permanent disability and life pension payments to be calculated (1) prospectively from the January 1 following the year

2

in which the worker first becomes "entitled to receive a life pension or total permanent disability indemnity" (§ 4659(c)), i.e., when the payments actually commence; (2) retroactively to January 1 following the year in which the worker sustains the industrial injury, the construction urged by real party in interest, or (3) retroactively to January 1, 2004, in every case involving a qualifying industrial injury, regardless of the date of injury or the date the first benefit payment becomes due, the interpretation given the statutory language by the Court of Appeal below.

Applying the "fundamental rule of statutory construction . . . that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law [citations]" (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 (*DuBois*)), we conclude that, through the operative language of subdivision (c), the Legislature intended that COLA's be calculated and applied prospectively commencing on the January 1 following the date on which the injured worker first becomes entitled to receive, and actually begins receiving, such benefit payments, i.e., the permanent and stationary date in the case of total permanent disability benefits, and the date on which partial permanent disability benefits become exhausted in the case of life pension payments.

### FACTS AND PROCEDURAL BACKGROUND

The injured worker in this matter, X.S.[2] (applicant), sustained an industrial injury on January 20, 2004, while employed as an accountant/controller. He received temporary disability payments of $728 per week from the date of injury through October 19, 2006. On June 19, 2007, he and his employer settled his

_____

[2] X.S. is a shortened version of a fictitious name assigned by the presiding workers compensation administrative law judge to protect applicant's medical privacy.

3

claim, stipulating that he had become permanent and stationary on October 20, 2006, and that he suffered a 69.5 percent partial permanent disability, compensation for which was payable at the rate of $200 per week based on his earnings and date of injury (§ 4453, subd. (b)(6)(B)), for 422 weeks, commencing on the permanent and stationary date.

Approximately one month after settling his claim with his employer, applicant, who had a preexisting disability caused by hepatitis B and his HIV-positive status, filed an application for benefits from the Subsequent Injury Benefit Trust Fund (SIBTF) pursuant to section 4751.[3]  Petitioner in this matter, Christine Baker, is the Director of Industrial Relations serving as administrator of the SIBTF.  SIBTF is funded and administered by the state for the purpose of compensating workers with prior disabilities who suffer subsequent industrial injuries.

On March 25, 2008, SIBTF and applicant stipulated that his January 20, 2004 injury resulted in a 69.5 percent permanent disability; that he became permanent and stationary on October 20, 2006; that payments for permanent disability commenced on that date; and that his previous permanent disability combined with his industrial disability resulted in a combined total permanent

_____

[3]     Section 4751 provides, in relevant part:  "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury . . . ."  (§ 4751.)  The payment for the combined disability is made by the SIBTF. (*Subsequent Injuries Fund v. Workmen's Comp. App. Bd*. (1970) 2 Cal.3d 56, 59.)

disability of 100 percent. The parties agreed that applicant would receive weekly payments of $528 from the SIBTF ($728 less $200 paid by the employer's workers' compensation insurance carrier), which payments would continue for 422 weeks, and thereafter $728 weekly for life.

Subsequently, a dispute arose when applicant claimed the initial $728 weekly rate that started on October 20, 2006, had to be increased to reflect annual increases in the SAWW, through the calculation of retroactive COLA's for the period from January 1 following the date on which he had sustained his industrial injury (Jan. 20, 2004), to the date on which his total permanent disability payments commenced (the permanent and stationary date of Oct. 20, 2006). Petitioner, on behalf of the SIBTF, maintained that the weekly payment of $728 to applicant, commencing on the permanent and stationary date, properly reflected the total permanent disability rate calculated under sections 4659, subdivision (b) and 4453 (a related section under which total permanent disability rate payments are calculated, referenced in § 4659, subd. (b)), and that the annual indexing of that payment with COLA's should not commence, per the language of section 4659(c), until January 1, 2007, which was the January 1 following the date applicant became permanent and stationary and actually began receiving his payments.[4]

On July 14, 2008, the worker's compensation administrative law judge (WCJ) issued a "Findings and Award" against the SIBTF, concluding that by failing to retroactively calculate and apply the annual COLA's for January 1, 2005 (the first "January 1" following the date of injury) and January 1, 2006, COLA

---

[4] There was no dispute among the parties that payments made on and subsequent to January 1, 2007, going forward, should be indexed annually, on that and each successive January 1, based on the percentage increase of the SAWW as compared to the "prior" year. (§ 4659(c), 1st sentence.)

5

increases had been improperly withheld from applicant in the amount of $3,585.56.

The SIBTF appealed to the Workers' Compensation Appeals Board (WCAB), which, on February 13, 2009, issued its "Opinion and Decision After Reconsideration," construing section 4659(c) as "provid[ing] that for injuries on or after January 1, 2003, where an employee becomes entitled to total permanent disability indemnity or a life pension, that payment shall be increased annually commencing on January 1, 2004. We construe this to mean that each payment of total permanent disability indemnity or life pension that is received on or after January 1 *following the date of injury* shall be increased, no matter when the first such payment is received. This ensures that severely injured workers are protected from inflation, no matter when they receive their first payment. In some cases there may be years of litigation before there is a determination that an employee is entitled to receive a life pension or total permanent disability indemnity award. In the case of a life pension, the first payment will ordinarily be made years after the date of injury. Nonetheless, the injured worker will have been protected against any inflation that may have ensued between the date of injury and the date of first payment of the life pension or total permanent disability indemnity." (Italics added.)

On March 30, 2009, following the WCAB's final decision, the SIBTF petitioned the Court of Appeal for a writ of review (§ 5950), urging that the WCAB had misinterpreted section 4659(c) by finding that the statute's COLA increases begin accruing (and compounding) prior to the January 1 after the permanent and stationary date, the date on which the first benefit payment actually becomes due and payable, and asserting that "by holding that the payment increase is tied to the date of injury, the [WCAB] decided that the increase applies *before* an employee is entitled to receive a benefit payment, contrary to the plain

language of the statute which stated that the increase applies to 'an employee who *becomes entitled* to receive' a life pension or total permanent disability indemnity." (Italics in original.)

The Court of Appeal granted the writ of review and received full briefing, as well as amicus curiae briefs from the California Applicants' Attorneys Association (CAAA) in support of applicant, and the County of Los Angeles on behalf of the SIBTF. In its amicus brief, the CAAA noted that, under applicant's reading of the statute, the COLA's began accruing on January 1 following the date of injury, whereas under the SIBTF's interpretation, the COLA's began accruing only with the first payment of indemnity after the injured worker becomes permanent and stationary, "which could be many years after the date of injury." The CAAA asserted that both were wrong, as the "plain language of the statute mandates that the COLA *in fact begins to accrue January 1, 2004, without regard to date of injury*." (Italics added.)

Agreeing with the position taken by the CAAA, the Court of Appeal concluded that "the [COLA's] pursuant to [§ 4659(c)], for life pensions and total permanent disability indemnity, are added to those payments, per the words of the statute, starting January 1, 2004, and every January 1 thereafter," and annulled the decision of the WCAB. The court reasoned that "as to the worker whose injury leads to total permanent disability that does not become permanent and stable for a number of years, setting the COLA's from the permanent and stationary date causes that worker to see his or her payment exposed to the ravages of inflation over time, eroding the real value of the benefits."

We granted the SIBTF's petition for review. We thereafter granted the requests of the State Compensation Insurance Fund and the California Chamber of Commerce to file amicus curiae briefs in support of petitioner, and the CAAA and

7

the California Correctional Peace Officers Association to file amicus curiae briefs in support of applicant.

## DISCUSSION

"As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose. (*People v. Lewis* (2008) 43 Cal.4th 415, 491.) 'We begin with the text of the statute as the best indicator of legislative intent' (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 844), but we may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1105)." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 27; *DuBois, supra,* 5 Cal.4th at p. 387.) "[O]ur first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.]" (*Dubois,* at pp. 387-388.)

Section 4659(c) comprises two sentences, the first of which contains the indexing scheme's operative language, and the second of which defines the SAWW for purposes of the subdivision. The first sentence provides: "For injuries occurring on or after January 1, 2003, an employee *who becomes entitled to receive* a life pension or total permanent disability indemnity as set forth in subdivisions (a) and (b) shall have *that payment* increased annually commencing on January 1, 2004, and each January 1 thereafter, by an amount equal to the percentage increase in the 'state average weekly wage' as compared to the prior year." (§ 4659(c), italics added.)

Petitioner SIBTF argued below that under a straightforward reading of the first sentence of subdivision (c), there is no retroactive calculation of COLA's or additional sums to be added into the first total permanent disability or life pension

8

payment for periods prior to the date on which the worker first becomes eligible to receive, and actually begins receiving, such payment.  Instead, the first COLA would be computed and applied to the payment on the January 1 following the year in which the worker becomes permanent and stationary or, in the case of life pensions, on the January 1 following the year in which the worker's partial permanent disability benefits have become exhausted.

The express language of the operative first sentence of subdivision (c) plainly supports this construction.  To receive the benefit of a COLA on any given January 1, a worker who has sustained an industrial injury must meet two conditions.  First, he or she must have been injured "on or after January 1, 2003 . . ."  (§ 4659(c).)  Second, he or she must "*become*[] *entitled* to receive a life pension or total permanent disability indemnity . . . ."  (*Ibid.*, italics added.)  This court's past decisions explain that the entitlement to total permanent disability indemnity payments arises when the injured worker's condition becomes permanent and stationary or, to put it in other terms, when the statutory obligation to pay temporary disability indemnity has ceased.  (*LeBoeuf v. Workers' Comp. Appeals Bd*. (1983) 34 Cal.3d 234, 238, fn. 2; *Department of Rehabilitation, supra,* 30 Cal.4th at p. 1292.)  In the case of life pension benefits, the entitlement to receive such payments arises, by statute, when the worker's partial permanent disability benefits have been exhausted.  (§ 4659, subd. (a).)  Hence, under subdivision (c)'s express language, it is not until the injured employee "*becomes entitled to receive* a life pension or total permanent disability indemnity" (§ 4659(c), italics added), and actually begins receiving such payments, that he or she "shall have *that payment* increased annually . . . by an amount equal to the percentage increase in the 'state average weekly wage' as compared to the prior year."  (*Ibid.*, italics added.)

9

The reference to the fixed date of January 1, 2004, in the first sentence of section 4659(c) ("commencing on January 1, 2004, and each January 1 thereafter") is not inconsistent with this construction of its operative provisions. Since the subdivision applies only to injuries occurring "on or after January 1, 2003" (§4659(c)), the date of January 1, 2004, is the first "January 1" on which a COLA may be calculated and applied under the subdivision's statutory scheme, i.e., for those workers who were injured on or after January 1, 2003, and who, during that calendar year, became permanent and stationary and thus became "entitled" (*ibid.*) to receive total permanent disability payments as of January 1, 2004.[5] The phrase "shall have that payment increased annually *commencing on January 1, 2004, and each January 1 thereafter*" (§ 4659(c), italics added) is thus most reasonably understood as a reference to the overall period to which the new statutory scheme will apply, or put another way, the indexing provision's effective date, with January 1, 2004, being the first "January 1" on which a COLA could be calculated and applied for qualifying injuries sustained after January 1, 2003.

This straightforward and sensible reading of the operative language of subdivision (c) then applies uniformly to all successive years postdating the statute's effective date. Each January 1, "commencing on January 1, 2004, and each January 1 thereafter" (§ 4659(c)), an employee who has sustained a qualifying industrial injury "on or after January 1, 2003" *and* who has "become entitled to receive a life pension or total permanent disability indemnity" "shall

---

**5** It is not likely that a worker who sustains a *partial* permanent disability from an injury occurring on or after January 1, 2003, would have his or her partial permanent disability benefits awarded and exhausted within the ensuing year, thus entitling him or her to receive life pension benefits by January 1, 2004. But a close reading of the syntax of the first sentence reflects that this circumstance does not undermine our construction of the provision.

10

have that payment increased annually . . . by an amount equal to the percentage increase in the 'state average weekly wage' as compared to the prior year."  (*Ibid.*)

The Court of Appeal, in contrast, construed the phrase "shall have that payment increased annually commencing on January 1, 2004, and each January 1 thereafter . . ." (§ 4659(c)), as meaning that every worker who sustains an industrial injury on or after January 1, 2003, regardless of the date he or she is injured, and who thereafter becomes eligible to receive total permanent disability or lifetime pension payments, even if that be decades into the future, must receive annual COLA's calculated and applied to any such future payments *retroactive to January 1, 2004.*  The court believed it was thereby giving effect to the literal language of the statute ("shall have that payment increased annually commencing on January 1, 2004 . . ." (§ 4659(c)).  The court reasoned that "as to the worker whose injury leads to total permanent disability that does not become permanent and stable for a number of years, setting the COLA's from the permanent and stationary date causes that worker to see his or her payment exposed to the ravages of inflation over time, eroding the real value of the benefits."  It concluded the Legislature must have intended to remedy such inequity by authorizing COLA's retroactive to January 1, 2004, in every case qualifying for indexing treatment under the statutory scheme.

"[W]e may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results (*Ornelas v. Randolph* [, *supra,*] 4 Cal.4th 1095, 1105)."  (*Simpson Strong-Tie Co., Inc. v. Gore, supra,* 49 Cal.4th at p. 27; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 113.)  We find that the Court of Appeal's purported literal construction of the reference to the date "January 1, 2004" in section 4659(c) is implausible for several reasons.

First and foremost, the Court of Appeal's construction is patently at odds with the operative language of section 4659(c), as described above. Calculating and applying COLA's retroactively to the arbitrary fixed date of January 1, 2004 in every case reads right out of the statute the requirement that the disabled worker must first "become[] entitled to receive a life pension or total permanent disability indemnity" (§ 4659(c)) before COLA's may be applied to such payments. Similarly, before an injured worker becomes entitled to receive disability payments, there simply is no "payment" ("shall have *that payment* increased annually . . .") (§ 4659(c), italics added) to be increased.

Next, to ascribe such a literal meaning to the drafters' inclusion of the fixed date of January 1, 2004, in the statutory language would expand the scope of the statute's indexing provisions in a manner the Legislature could not within reason have intended. Under the Court of Appeal's interpretation of section 4659(c), a worker who did not sustain his or her industrial injury until the year 2008, or 2011, and indeed workers who will not suffer such injuries qualifying them for total permanent disability or life pension benefits until well into the future, would still receive annual COLA's for every calendar year commencing on the arbitrary date of January 1, 2004, through to the date on which they become entitled to and actually begin receiving their benefit payments, which COLA's would further then be compounded from January 1, 2004, going forward. Even persons who have not yet joined the work force, and for whom workers' compensation insurance premiums have yet to be paid, but who, in years to come, may become employed, sustain industrial injuries, and qualify for the two categories of disability benefits covered under subdivision (c), would likewise have their future benefit payments enhanced by compounded annual COLA's retroactive to the arbitrary fixed date of January 1, 2004, under the Court of Appeal's construction of the statute. The

12

Legislature could not possibly have envisioned or intended such an expansive application of the statute's anti-inflationary protections.

Furthermore, as petitioner observed below, under the Court of Appeal's construction of the statute, many workers with industrial injuries qualifying them for total permanent disability benefits could actually receive a windfall "double escalator" as a result of applying retroactive COLA's for the period from January 1, 2004, until the date they sustain their injury. This is so because of the provisions of section 4453, subdivision (a)(10), which operate in conjunction with section 4659, subdivision (b), to set the total permanent disability payment rates based on the worker's earnings on the date of injury. Briefly, section 4453, subdivision (a)(10), sets forth brackets (floors and ceilings) for determining *temporary* disability payments based on the injured worker's earnings on such date. For injuries occurring after January 1, 2007, the upper brackets are themselves indexed to the SAWW (i.e., increased) to account for the effects of inflation over time.[6] Section 4659, subdivision (b), in turn, extends those increases in the ceiling brackets for temporary disability payments to the calculation of total permanent disability payment rates. As a result of the interplay of these two statutes, under the Court of Appeal's interpretation of section 4659(c)'s indexing provision, a maximum earnings worker sustaining an industrial injury in 2011 that leads to total permanent disability would receive the benefit of both section 4453, subdivision (a)(10)'s increase in the ceiling brackets used to calculate *temporary* disability payment rates (i.e., adjusted for inflation), which are then utilized to calculate the total permanent disability payment rate by virtue of

---

[6]    Applicant here sustained his industrial injury on January 20, 2004. Accordingly, the SAWW indexing provision found in section 4453, subdivision (10), has no direct application to his case.

13

section 4659, subdivision (b), *and* the benefit of the annual (and compounded) COLA's calculated and applied retroactive to January 1, 2004, for the period from that date until the date of injury in 2011 — the "double escalator" complained of by petitioner below.

"The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) It is unreasonable to infer that the Legislature intended *two* distinct anti-inflation measures to overlap and apply to the calculation of the same total permanent disability payment rate. Moreover, workers who sustain industrial injuries qualifying them for total permanent disability payments receive temporary disability payments for the period between the date of injury and the date they become permanent and stationary and begin receiving their permanent payments. Depending on the date of injury, the Legislature has provided that those temporary disability payments may themselves be indexed to the SAWW, thereby protecting the payments received by the worker during that waiting period from the effects of inflation. (See §§ 4453, subd. (a)(10), 4653, 4661.5.)

Next, to the extent the phrase "shall have that payment increased annually *commencing on January 1, 2004*, and each January 1 thereafter . . ." (§ 4659(c), italics added) can be viewed as creating some ambiguity in the operative language, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.) We find an examination of the legislative history of section 4659(c), enacted by Assembly Bill No. 749 (2001-2002 Reg. Sess.) (Stats. 2002, ch. 6,

14

§ 67), lends no support to the argument that the Legislature intended to expand the inflation protection of subdivision (c), through the language utilized in its operative sentence, by authorizing COLA's to be calculated retroactive to either the fixed date of January 1, 2004, in every case, or to the January 1 following the date on which the worker sustains his or her qualifying industrial injury.

First, the Workers' Compensation Insurance Rating Bureau of California (WCIRB) prepared a cost analysis report for the Legislature, which is part of the official legislative history of Assembly Bill No. 749 (2001-2002 Reg. Sess.), in which the indexing of disability benefits proposed in the new legislation was summarized and analyzed. (WCIRB, Preliminary Evaluation of Assembly Bill No. 749 as Amended January 31, 2002 (Feb. 1, 2001) pp. 1-2.) In that report, the WCIRB stated, "AB 749 provides that weekly permanent total benefits [*sic*] paid during each calendar year be increased annually by the change in the state average weekly wage. *We have assumed these annual increases would commence the year following the year in which permanent total benefit payments began*." (*Id.*, appen., Summary of Benefits Proposed, § 2, fn. 1, italics added.) At the very least, this legislative history reflects that when enacting section 4659(c), the Legislature had before it for consideration the solicited opinion of a workers' compensation insurance rating service, which analyzed the legislation's provisions and fiscal impact, and concluded the annual COLA's authorized thereunder would, per the bill's language, be applied prospectively once the injured worker's total permanent disability payments commenced.

Second, in the Assembly debates over the proposed workers' compensation reform measures in the 2001-2002 legislative session, the question arose whether COLA's for total permanent disability and life pension payments should be retroactively extended to workers who had sustained their industrial injuries prior to January 1, 2003, and who were receiving lifetime disability payments without

15

any adjustments for inflation. Then Governor Davis vetoed two earlier attempts at reform (Sen. Bill No. 71 (2001-2002 Reg. Sess.) and Assem. Bill No. 1176 (2001-2002 Reg. Sess.)) because, inter alia, he viewed the total costs of those packages, which included COLA's for pre-2003 injured workers, as exorbitant. (See Assem. Com. on Insurance, Analysis of Assem. Bill No. 749 (2001-2002 Reg. Sess.) as amended Jan. 31, 2002, pp. 17-18; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 749 (2001-2002 Reg. Sess.) as amended Jan. 31, 2002, p. 2.) It would be unreasonable to conclude that the Legislature, having agreed in the final enacted version of subdivision (c) to forego retroactive COLA's for workers with pre-2003 injuries as a cost-saving compromise, would then extend COLA's to all current workers who will sustain qualifying industrial injuries in future years, and to those persons who will sustain such future injuries but have yet to even enter the workforce, retroactive to the fixed arbitrary date of January 1, 2004, as a component of the compromise legislation.

The COLA's provided for in subdivision (c) apply to only two categories of disability benefits: total permanent disability and life pension payments, and only then for injuries sustained after January 1, 2003. It can further be observed that partial permanent disability payments for industrial injuries rated at less than 70 per cent, and temporary disability payments for workers in all such categories whose injuries predate 2007, are not indexed to the SAWW to protect such payments against inflation. Indeed, adjustment for inflation seems to be more the exception than the rule. (See § 4453, subd. (d) ["Except as provided in section 4661.5 [for the calculation of temporary disability payments more than two years after the date of injury], disability indemnity benefits shall be calculated according to the limits in this section in effect on the date of injury and shall remain in effect for the duration of any disability resulting from the injury."].) In short, we find no compelling reason to conclude the Legislature intended the COLA's authorized

16

under section 4659(c) to broadly redress all the potentially erosive effects of inflation—past, present and future—for every case falling within the two categories of disability benefits covered under subdivision (c).

Last, applicant's argument that section 4659(c) calls for the calculation of COLA's retroactive to the January 1 following the date of injury must be rejected for the same reasons we have found the Court of Appeal's construction of the statutory language untenable.  Applicant's construction would likewise conflict with the straightforward operative language of the subdivision's first sentence, because workers who suffer total permanent disability, or partial permanent disability sufficiently serious to give rise to the right to life pensions, do not "become[] eligible" (§ 4659(c)) to receive such benefit payments as of the date of injury or the January 1 immediately following that date.  (Indeed, life pension payments usually commence many years if not decades after the date of injury.)  Hence there is no "payment" (§ 4659(c)) to which COLA's can be applied as of the date of injury under the statute's operative language.  Moreover, for the same policy and legislative history reasons given for rejecting the Court of Appeal's expansive reading of the statute, we find no basis to conclude that the Legislature, through the language utilized in subdivision (c), actually intended to extend the COLA's authorized thereunder retroactive to the January 1 following the date of injury.

The WCAB below agreed with the interpretation of the statutory language urged by applicant, suggesting that, "[t]his holding is also consistent with the second sentence of section 4659(c).  The state average weekly wage which is the basis of the increased payments is determined initially by data in the 'calendar year preceding the year in which the injury occurred,' not the year in which the first payment is made.  This is further evidence of legislative intent that the

17

increased payments be calculated from the January 1 following the date of injury, not from the date of first payment."

The second sentence of section 4659(c) reads, "For purposes of this subdivision, 'state average weekly wage' means the average weekly wage paid by employers to employees covered by unemployment insurance as reported by the United States Department of Labor for California for the 12 months ending March 31 of the calendar year preceding the year in which the injury occurred." (§4659(c).)

The WCAB's Opinion and Decision After Reconsideration offered no further guidance as to how the language in the second sentence, which specifically references SAWW data for "the calendar year preceding the year in which the injury occurred" (§ 4659(c)), might be read consistently with the operative language of the first sentence to support applicant's position that the COLA's must be calculated and applied from the January 1 following the date of injury. We make the following brief observations regarding the matter.

First, the question directly before us in this case is *when* the COLA's authorized under subdivision (c) must be applied under the operative language, i.e., prospectively, from the January 1 following the date on which the worker first becomes eligible to receive the benefit payments and actually begins receiving them, as was argued by petitioner below, or retroactively, i.e., from either the fixed date of January 1, 2004 (the Court of Appeal's construction of the subdivision), or from the January 1 following the date of injury (applicant's position). Consideration of the language of the second sentence of subdivision (c) sheds little light on that inquiry, and, as noted, the WCAB's decision neither analyzed the relevant statutory language nor explained how the special definition of the SAWW found in the second sentence could be squared with the operative

18

language of the first sentence and thereby support its conclusory determination that the date of injury controls.

Second, the parties below agreed, as apparently did the WCAB and the Court of Appeal, that, looking forward from the January 1 following the date on which the worker's benefit payments in question first become due and payable, the COLA's must then be calculated and applied "each January 1 thereafter" (§ 4659(c)), to reflect each successive year's percentage change in the SAWW "*as compared to the prior year*" (*id.*, italics added) for the duration of the worker's lifetime payments. As petitioner states in the opening brief, "No one disputes that once payments begin, the raise in payments each year is based on the increase in the state average weekly wage *from the prior calendar year*." (Italics added.)

Neither the parties nor the Court of Appeal focused on the special definition of the SAWW contained in the second sentence of section 4659(c). Nor did they seek to explain how the phrase "average weekly wage paid by employers to employees covered by unemployment insurance as reported by the United States Department of Labor for California for the 12 months ending March 31 *of the calendar year preceding the year in which the injury occurred,*" utilized in that definition, could be given effect together with the operative language of the first sentence, "shall have that payment increased annually . . . by an amount equal to the percentage increase in the 'state average weekly wage' *as compared to the prior year*." (§ 4659(c), italics added.) Accordingly, we have no clear occasion in this case to construe the language or import of the special definition of the SAWW contained in section 4659(c). That having been said, we briefly observe that the special definition, which purports to tie any year-to-year change in the SAWW to the figures for the year preceding the date of injury, appears in conflict with the otherwise clear language of the first sentence, which defines the COLA's in the

19

traditional sense, as "an amount equal to the percentage increase in the 'state average weekly wage' *as compared to the prior year*." (*Ibid.*, italics added.)

Although the parties have not briefed or argued the point, our research reveals that the Legislature's two earlier attempts at drafting the inflation-offsetting measures of subdivision (c), Senate Bill No. 71 (2001-2002 Reg. Sess.) and Assembly Bill No. 1176 (2001-2002 Reg. Sess.), both of which were vetoed by then Governor Davis, contained the following language as the proposed subdivision's second sentence: "For the purpose of this subdivision, 'state average weekly wage' means the average weekly wage paid by employers to employees covered by unemployment insurance, as reported to the Employment Development Department for the four calendar quarters ending June 30 *of the calendar year preceding the year in which the adjustment is made*." (Italics added.)

The current text of section 4659(c)'s second sentence is no model of clarity. Perhaps the Legislature may wish to revisit the suitability of the current language of the second sentence of subdivision (c) in light of the operative language of the first sentence.

## CONCLUSION

The judgment of the Court of Appeal is reversed and the matter remanded to that court for further proceedings consistent with the views expressed herein.

**BAXTER, J.**

WE CONCUR:

CANTIL-SAKAUYE, C. J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LAMBDEN, J.P.T.*

_____
* Associate Justice, Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Baker v. Workers' Compensation Appeals Board and X.S.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 179 Cal.App.4th 1009
**Rehearing Granted**

_____

**Opinion No.** S179194
**Date Filed:** August 11, 2011
_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Vanessa L. Holton, Steven A. McGinty, Carol Belcher, Anthony Mischel and Jesse N. Rosen for Petitioner.

Robert E. Kalunian, Acting County Counsel (Los Angeles), Leah D. Davis, Assistant County Counsel, Jeffrey L. Scott and Jason E. Waller, Deputy County Counsel, for County of Los Angeles as Amicus Curiae on behalf of Petitioner.

Suzanne Ah-Tye, Patricia A. Brown and David M. Goi for State Compensation Insurance Fund as Amicus Curiae on behalf of Petitioner.

Law Offices of Saul Allweiss and Michael A. Marks for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioner.

Finnegan, Marks, Theofel & Desmond and Ellen Sims Langille for the California Chamber of Commerce as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent Workers Compensation Appeals Board.

Butts & Johnson, Arthur L. Johnson and Heather A. Harper for Respondent X.S.

Marcus & Regalado, Marc G. Marcus and Jason M. Marcus for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent X.S.

Frank Rankin for California Correctional Peace Officers Association as Amicus Curiae on behalf of Respondent X.S.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Anthony Mischel
Department of Industrial Relations
Office of the Director-Legal Unit
320 W. 4th Street, Suite 600
Los Angeles, CA  90013
(213) 576-7725

Ellen Sims Langille
Finnegan, Marks, Theofel & Desmond
1990 Lombard Street, Suite 300
San Francisco, Ca  94123
(415) 931-9284

Arthur L. Johnson
Butts & Johnson
481 N. First St.
San Jose, CA  95112
(408) 293-4818

Marc G. Marcus
Marcus & Regalado
3031 F Street, Suite 100
Sacramento, CA  95816
(916) 441-1611