Filed 7/28/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTINE BAKER, as Administrator, etc., | H043291 (W.C.A.B. No. ADJ1377005) |
| Petitioner, | WRIT OF REVIEW |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and JIM GUERRERO, | |
| Respondents. | |

We granted the petition for writ of review in this matter to answer a previously unresolved question: At what point does the Subsequent Injuries Benefits Trust Fund, the state fund that pays workers' compensation benefits to certain permanently disabled workers, begin to owe those benefits to a qualifying applicant? We conclude that under the controlling statutes, Subsequent Injuries Benefits Trust Fund benefits commence at the time the employer's obligation to pay permanent disability benefits begins. We will therefore affirm the decision of the Workers' Compensation Appeals Board.[1]

---

[1] In connection with the petition for writ of review, at petitioner's request we have taken judicial notice of the legislative history of SB 863 (2011–2012 Reg. Sess.) and SB 899 (2003–2004 Reg. Sess.), as well as the decision of the Workers' Compensation Appeals Board in *Elizabeth Cochran v. Subsequent Injuries Fund, Winship Properties, State Compensation Insurance Fund* (2016) Cal.Wrk.Comp. P.D. Lexis 198).

# I.  BACKGROUND

## A.  THE SUBSEQUENT INJURIES BENEFITS TRUST FUND

California has long had in place laws requiring employers to compensate workers who are injured on the job.  The purpose of this legislation is to provide an efficient mechanism for paying medical expenses and replacing lost wages of injured workers, without the need to determine who is at fault for causing the injury and without protracted litigation.  (See Labor Code § 3200 et seq.  Unspecified statutory references are to this code.)  The workers' compensation bargain is that in exchange for giving up the ability to seek tort damages against an employer for on-the-job-injuries, employees gain a statutory right to the employer's payment of injury-related expenses.  (*Everfield v. State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15, 18.)  All employers are required to maintain insurance or furnish sufficient security for the purpose of paying workers' compensation claims.  (§ 3700.)

Through an administrative process, an employee who applies for workers' compensation is evaluated to determine the nature of the injury and the degree of any resulting disability.  The employee may be awarded compensation in any of several categories, depending on the extent of the injury and the employee's ability to return to work: temporary disability (either total or partial), permanent disability (total or partial), or a life pension.  (§§ 4653–4655, 4659.)

The duty for employers to compensate employees for the full extent of a disability resulting from a work-related injury could adversely affect the hiring of disabled workers, due to the perception that a worker already limited by a disability is more likely to become totally disabled in the event of further injury and need greater compensation.  The Subsequent Injuries Benefits Trust Fund (SIBTF) was created by the Legislature to counteract that disincentive.  (§§ 62.5 and 4751 et seq.)

Under the relevant statutes, the SIBTF pays a portion of the permanent disability compensation owed to a qualifying worker.  (§ 4751).  A qualifying worker is one who is

already suffering from a permanent partial disability and then incurs a further work-related injury that, combined with the existing disability, leaves the worker with a permanent disability rating of at least 70 percent. (*Ibid.*) In addition, either the previous disability affected a hand, arm, foot, leg or eye, with the new injury affecting the opposite corresponding member; or, regardless of the nature of either injury, the subsequent injury alone equates to a permanent disability rating of at least 35 percent. (*Ibid.*) A worker who meets these criteria is eligible to receive benefits from the SIBTF. In such a case, the employer pays only that portion of the permanent disability compensation determined to be directly attributable to the last on-the-job injury and the SIBTF pays the remainder. (*Ibid.*) The compensation paid by the SIBTF is separate from and in addition to the compensation paid by the employer. (*Ibid.*)

### B. FACTUAL AND PROCEDURAL HISTORY

Jim Guerrero applied for workers' compensation benefits after he was injured in the course of his employment as a construction laborer. He received temporary disability benefits for the periods of November 18, 2005–December 4, 2005; and January 17, 2006–June 15, 2006. His entitlement to permanent disability benefits was contested, but ultimately settled in December 2014. The resulting compromise and release agreement provided that Guerrero would receive a lump sum in satisfaction of his employer's obligation to pay permanent disability benefits, less the amount of permanent disability payments his employer had advanced during the pendency of the proceedings.

Guerrero also applied for benefits from the SIBTF, asserting that a prior medical condition when combined with the work injury left him sufficiently disabled to meet the eligibility requirements for SIBTF payments. The SIBTF contested his entitlement to benefits. In October 2015 a Workers' Compensation Administrative Law Judge ordered the SIBTF to pay, finding that Guerrero's preexisting condition combined with the subsequent injury left him totally and permanently disabled.

The administrative law judge fixed the beginning date for SIBTF payments as June 16, 2006, the day after temporary disability payments ceased. The SIBTF contended its obligation should not begin until January 26, 2011 (the date when Guerrero's injuries were deemed permanent and stationary), but the administrative law judge rejected this argument and ordered that SIBTF benefits commence at the same time the law required the employer to begin making permanent disability payments.

The SIBTF petitioned the Workers' Compensation Appeals Board for reconsideration of the award, and the Appeals Board denied the petition. The SIBTF then petitioned this court for a writ of review on the issue of when its payments to a qualifying worker must commence.

## II. DISCUSSION

### A. STANDARD OF REVIEW

The parties do not dispute the relevant facts and we therefore review de novo the purely legal question of when the law requires the SIBTF to begin paying benefits. (*Tanimura & Antle v. Workers' Compensation Appeals Bd.* (2007) 157 Cal.App.4th 1489, 1494.) But in doing so we must give great weight to the Workers' Compensation Appeals Board's interpretation of the applicable statutes, unless that interpretation is clearly erroneous. (*Ibid.*)

### B. PRINCIPLES OF STATUTORY CONSTRUCTION

Resolving the question presented here requires us to interpret statutes governing the payment of workers' compensation and SIBTF benefits. We are guided by well-established rules of statutory construction. Our primary goal in construing a statute is to ascertain and effectuate the Legislature's intent. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 708.) " ' "Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context [citation]. [Citation.] If the language contains no ambiguity, we presume the Legislature meant

what it said, and the plain meaning of the statute governs." ' " (*Id.* at pp. 708–709.) If a statute is amenable to different interpretations, the interpretation that leads to the more reasonable result should be followed. (*People v. Arias* (2008) 45 Cal.4th 169, 177.) We must construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. (*People v. Cottle* (2006) 39 Cal.4th 246, 254.)

In addition, when construing a provision from the Workers' Compensation Act, if the statute can reasonably be construed in a manner that would provide coverage or payments we must adopt that construction. (*Wright v. State of California* (2015) 233 Cal.App.4th 1218, 1229; *Subsequent Etc. Fund v. Industrial Acc. Com.* (1952) 39 Cal.2d 83, 91 ["The policy of the law, enjoined by both statute and precedent, directs that workmen's compensation laws shall be liberally construed in favor of extending their benefits."].)

## C. WHEN SIBTF PAYMENTS MUST COMMENCE

Petitioner, the Director of Industrial Relations (in her capacity as administrator of the SIBTF), argues that the Workers' Compensation Appeals Board erroneously relied on Labor Code section 4650, subdivision (b) to determine that SIBTF payments in this case should begin once the employer's obligation to pay temporary disability benefits ends. Petitioner asserts that the plain language of section 4650 indicates it applies only to workers' compensation benefits payable by *employers*, and the SIBTF is not an employer. According to Petitioner, it is section 4751 that controls when SIBTF benefits must commence, and the proper start date is when the applicant's injury is declared permanent and stationary.

Section 4650, subdivision (b) governs the payment of workers' compensation benefits for permanent disability. It provides that an employer must begin making permanent disability payments to an employee within 14 days of the date that the employee's last payment for temporary disability was owed. Even if the employee's

injury has not yet been determined to be permanent and stationary, the employer must start making permanent disability payments once temporary benefits cease. (§ 4650, subd. (b)(1) ["… regardless of whether the extent of permanent disability can be determined at that date, the employer nevertheless shall commence the timely payment required by this subdivision and shall continue to make these payments until the employer's reasonable estimate of permanent disability indemnity due has been paid …"].)

Petitioner is correct that section 4650, subdivision (b), which states "the employer" must make timely payment of permanent disability benefits, applies only to benefits payable by employers, and that the SIBTF is not considered an employer for purposes of payment of workers' compensation benefits. (See *Subsequent Etc. Fund v. Industrial Acc. Com.*, *supra*, 39 Cal.2d at p. 92 ["We do not believe that the Subsequent Injuries Fund, even regarded as an entity, must necessarily be also regarded as in the position of an employer."].) Petitioner is also correct that the timing of SIBTF benefit payments is governed by section 4751. But petitioner is incorrect that those premises result in a different conclusion than the one reached by the Workers' Compensation Appeals Board.

Section 4751 provides, "[i]f an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article … ."

Giving the plain language of section 4751 a commonsense meaning, we read the Legislature's mandate that SIBTF benefits (when an employee qualifies for them) "shall be paid in addition to" permanent disability benefits to mean that the SIBTF is required to commence payments at the same time as an employer's obligation to make permanent disability payments begins. To hold otherwise would contravene the requirement of section 4751 that whenever an employee qualifies for SIBTF payments, they shall be paid "in addition to" the permanent disability payments made by the employer. The trigger for the start of SIBTF benefits must be the qualifying employee's entitlement to permanent disability payments from the employer. Once permanent disability payments are required for an employee who also qualifies for SIBTF benefits, the SIBTF is obligated to pay benefits "in addition to" those permanent disability benefits.

We acknowledge the language prescribing that SIBTF benefits "shall be paid in addition to" permanent disability benefits is amenable to a construction different from ours, since the statute does not expressly state when the additional SIBTF benefits *commence*. We therefore must adopt the construction that leads to the most reasonable result, construing the statutory provision in context and harmonizing it with the rest of the statutory framework. (*People v. Cottle*, *supra*, 39 Cal.4th at p. 254.)

Petitioner contends that under section 4751 an applicant is only entitled to SIBTF benefits upon the injury reaching permanent and stationary status (in this case, January 2011, over four years after the employer became obligated to pay permanent disability benefits). But petitioner cites no authority for that proposition. Instead, petitioner argues that payment of SIBTF benefits has "always commenced on the date when the injured worker reached maximum medical improvement and was declared permanent and stationary" by a medical examiner.

Although an established practice may inform our interpretation, it does not in itself provide a compelling reason to continue the practice, particularly when there has been an intervening change in law as there was here.[2] Sections 4650 and 4656, governing the timing of workers' compensation disability payments by an employer, were amended in 2004 as part of legislation that made a number of changes to the workers compensation system. Significant here, the statutory amendments altered the timing for employer payment of temporary and permanent disability benefits.

Section 4656 was amended to provide for a 104-week cap on temporary disability benefits. Temporary disability payments were previously paid by the employer until the injured worker either returned to work or the injury was deemed permanent and the worker was therefore unable to return to work. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1292). Under the amended statute, temporary disability payments are now payable for a maximum of 104 weeks.

To avoid a gap in payments to an injured worker whose medical condition is not deemed permanent until after the 104-week maximum temporary disability period, the Legislature concurrently amended section 4650 to provide that permanent disability payments must commence when temporary disability payments stop, even if the injury has not yet been deemed permanent and stationary. (See *Baker v. Workers' Comp. Appeals Bd.* (2011) 52 Cal.4th 434, 439, fn. 2 [finding that permanent disability payments

_____

[2] The effect of the change in law on SIBTF payments is illustrated by *Elizabeth Cochran v. Subsequent Injuries Fund, Winship Properties,State Compensation Insurance Fund*, *supra*, (2016) Cal.Wrk.Comp. P.D. Lexis 198, of which we took judicial notice at petitioner's urging. In that case, the Workers' Compensation Appeals Board decided the applicant's SIBTF benefits did not start until the date her injury was deemed permanent and stationary, and petitioner argues the outcome should be consistent here. But the injury in *Cochran* occurred in 2001. The applicable law was therefore the pre-2004 version of section 4650 providing that permanent disability benefits were payable by the employer beginning upon the permanent and stationary date—not the amended version that applies to Guerrero's injury and which changed the timing of the employer's obligation.

for injuries predating the 2004 amendment are payable upon the injury being declared permanent and stationary, but recognizing that for injuries occurring after the effective date of the amendment "it may be that an injured worker would become entitled to total permanent disability payments … before the worker's medical condition is permanent and stationary."].)

The overall effect of these amendments was to change the timing for permanent disability payments to begin, from when the injury has been declared permanent and stationary (under the former version of the statutes) to when temporary disability payments cease (under the current version).[3] As a result, the timing for the start of SIBTF benefits, which under section 4751 must be paid "in addition to" permanent disability benefits, necessarily also changed.

Petitioner argues the Legislature's decision to not amend section 4751 when it amended the statutes governing the payment of temporary and permanent disability benefits evidences its intent to not disturb the status quo with regard to SIBTF payments, i.e., that such payments are not required until a finding of permanent and stationary status. This argument misses the mark. The status quo for payment of SIBTF benefits has not changed: Such benefits were previously payable at the time permanent disability payments commenced, and they remain payable at the time permanent disability payments commence. The fact that the Legislature chose not to amend section 4751 when it changed the time for payment of permanent disability benefits actually weakens petitioner's argument. Had the Legislature intended for SIBTF benefits to be payable only upon a declaration of permanent and stationary status (as petitioner urges) rather

---

[3] Section 4650 was again amended, in 2012, to provide that an employer need not make permanent disability payments if the employee returned to work at a comparable position or the employer offered a position to the employee. For Guerrero, there was no return to work or offer of employment and therefore this provision is not at issue.

than being paid in addition to permanent disability payments from the employer (as the statute reads), it could have changed section 4751 to so provide—but it did not.

The construction urged by petitioner would also render the statutory scheme providing for SIBTF benefits ineffectual, an unreasonable outcome we cannot countenance. (See *Azusa Land Partners v. Department of Industrial Relations* (2010) 191 Cal.App.4th 1, 21–22 [courts must read each statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain its effectiveness].) If the language "shall be paid in addition to" which appears in section 4751 does not mean that SIBTF payments commence at the start of permanent disability payments, then the entire statutory scheme would contain no start date at all for SIBTF benefits. The start date proposed by petitioner—the date the injury is declared permanent and stationary—is not found anywhere in the statutes.

Petitioner points out that because an applicant's eligibility for SIBTF benefits cannot be determined until the injury is permanent and stationary (as only then can the level of permanent disability be ascertained), interpreting section 4751 in the manner we do here will require SIBTF benefits to be paid retroactively whenever permanent and stationary status occurs after 104 weeks (the maximum period of temporary disability payments). While it is true that in such cases SIBTF payments will be made retroactive to the date when permanent disability payments began—just as the administrative law judge ordered in this case—we fail to see how that fact changes the analysis of the plain language of section 4751 calling for SIBTF benefits be paid "in addition to" permanent disability benefits. In subsequent injury cases, whether a worker qualifies for SIBTF benefits is one issue that must be determined; the date when those benefits start accruing is another. Once it is determined that a worker's permanent and stationary injury qualifies the worker for SIBTF benefits, the proper accrual date for those benefits is the date the employer's obligation to pay permanent disability began.

We find further support for our reading of the statute in the Supreme Court's reasoning in *Baker v. Workers' Comp. Appeals Bd.*, *supra*, 52 Cal.4th 434. That case involved whether a workers' compensation statute providing for a yearly cost of living adjustment (COLA) when an applicant becomes entitled to receive permanent disability payments should be calculated beginning when the injury occurred, or when the applicant started receiving the permanent disability payments. The Court held the most reasonable construction of the statute is that it requires a COLA increase each year following the date the applicant begins receiving permanent disability payments because that is when the applicant becomes entitled to the payments. Just as the COLAs are connected to permanent disability payments as an increase in those payments, so too are SIBTF benefits connected to permanent disability payments as an amount paid in addition. Consistent with *Baker*, we hold that the entitlement to SIBTF benefits begins at the time the applicant becomes entitled to permanent disability payments.

Finally, even if petitioner's interpretation of the statute were equally reasonable, it would have the effect of denying injured workers SIBTF benefits (which are payable separate from and in addition to employer-paid benefits) during the gap between the end of the 104 weeks of temporary disability benefits and the date the injury is deemed permanent and stationary. Whenever there are two reasonable interpretations of a workers' compensation statute, we must adopt the construction of the statute that provides coverage or payments. (*Wright v. State of California*, *supra*, 233 Cal.App.4th at p. 1229.)

Based on the above reasoning and given that we must defer to the Workers' Compensation Appeals Board's interpretation of the relevant statutes unless it is clearly erroneous, we conclude that the start date for SIBTF benefits in this case was correctly determined.

### III.  DISPOSITION

The decision of the Workers' Compensation Appeals Board is affirmed.  The parties shall bear their own costs in this writ proceeding.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P. J.

_____

Elia, J.

*Baker v. Workers' Compensation Appeals Board et al.*
**H043291**

| Venue: | Workers' Compensation Appeals Board<br>Case No. ADJ 1377005 |
|---|---|
| Workers' Compensation Administrative Law Judge: | Hon. David L. Lauerman |
| Counsel for Petitioner Christine Baker, Director of Industrial Relations As Administrator of the Subsequent Injuries Benefits Trust Fund: | Christopher G. Jagard, Chief Counsel<br>Christopher Frick, Assistant Chief Counsel<br>Michelle G. Bethge, Staff Counsel<br>Department of Industrial Relations |
| Counsel for Respondent The Workers' Compensation Appeals Board of the State of California: | James Thomas Losee<br>Department of Industrial Relations/WCAB |
| Counsel for Real Party In Interest Jim Guerrero: | Arthur L. Johnson<br>Butts & Johnson |

***Baker v Workers' Compensation Appeal Board et al.***
**H043291**