Filed 4/7/21  P. v. Watson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ROBBIE GENE WATSON, JR.,<br><br>        Defendant and Appellant. | C077197<br><br>(Super. Ct. No. CRF13533 ) |

In September 2013, defendant Robbie Gene Watson, Jr., pursuant to a plea bargain, pleaded guilty to one count of inflicting corporal injury on his spouse.  (Former Pen. Code,[1] § 273.5, subd. (e), now § 273.5, subd. (f).)  As part of the bargain, the trial court released defendant on his own recognizance and suspended sentencing pursuant to a

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offense.

*Cruz*[2] waiver.  In January 2014, while on release, defendant attacked his spouse again, in violation of his *Cruz* waiver, which required, among other things, that he obey all laws and not revictimize his spouse.  In June 2014, the trial court sentenced defendant for the September 2013 offense, to five years in prison and imposed fees and fines.  A jury subsequently found defendant guilty of multiple charges for the January 2014 attack.  During sentencing for the January 2014 offenses, the court reconsidered but left unchanged the sentence for the September 2013 offense.  At that time, defendant was sentenced to an aggregate term of 19 years to life.

On appeal, defendant challenges the judgment and sentence for the September 2013 offense.  He contends:  (1) the trial court relied on an outdated probation report during sentencing for the September 2013 offense; (2) he received ineffective assistance of counsel both during the original sentencing hearing for the September 2013 offense and during the sentencing hearing for the January 2014 offenses when the court reconsidered the sentence for the September 2013 offense;  (3)  the trial court erroneously imposed fees that were not consistent with the parties' agreement; (4) the trial court failed to hold a hearing to determine whether he violated his *Cruz* waiver; and (5) when the trial court sentenced defendant to prison, it erroneously imposed a domestic violence fund fee applicable only when a defendant is sentenced to probation.  In supplemental briefing, defendant requests that (6) we strike, pursuant to Senate Bill No.136 (S.B. 136), his section 667, subdivision (b) prior prison term enhancement which was charged and found true as part of his 2014 case, (7) remand to allow the trial court to consider mental health diversion under section 1001.36 and (8) strike all fees and fines until there is a showing of ability to pay.

---

[2] *People v. Cruz* (1998) 44 Cal.3d 1247, 1250 (*Cruz*).

We agree the $500 domestic violence fee must be stricken and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with infliction of corporal injury resulting in a traumatic condition upon his spouse (the victim) occurring on September 6, 2013, with a prior domestic violence conviction (count 1; former § 273.5, subd. (e)(1), now § 273.5, subd. (f)(1)), and criminal threats occurring on September 6 and 8, 2013 (count 2; § 422).

Defendant entered into a plea agreement whereby he pleaded guilty to count 1 and count 2 was dismissed. The trial court released defendant on his own recognizance and suspended sentencing pursuant to a *Cruz* waiver. Pursuant to the plea agreement, if defendant successfully completed a six-month residential treatment program to address domestic violence and anger management issues, the section 273.5 offense would be reduced to a misdemeanor. However, defendant would be sentenced to five years imprisonment if he failed to complete the program; failed to appear; committed any new offenses; battered, annoyed, threatened or harassed the victim; or failed to stay 100 yards away from a former spouse, who was the victim in two prior domestic violence convictions. Defendant also agreed that, should he violate any of the aforementioned conditions, the court would no longer be bound by the plea bargain, and he would not have the right to withdraw his plea. Additionally, defendant agreed the sentencing judge would decide by a preponderance of the evidence whether he had violated the agreement.

Defendant had difficulty finding a residential treatment program that would accept him. In November 2013, defendant's attorney informed the court that defendant had not entered a residential treatment program. The court scheduled sentencing in December 2013, and a probation officer's report was prepared on December 3. The court continued the matter when defendant found a placement in December 2013. Defendant did not complete the program due to medical problems.

3

On January 10, 2014, defendant was arrested for another domestic violence attack on the victim. The trial court held a hearing on January 13, 2014, to consider this new incident and defendant's *Cruz* waiver related to the September 2013 charges. The court said it was "inclined to find that [defendant] has violated his *Cruz* waiver" and revoked defendant's release on his own recognizance. The court scheduled a hearing regarding defendant's compliance with his *Cruz* waiver, to be heard along with any charges related to the January 2014 incident. The court explained, "if [defendant] has committed another assault, then this deal is out the window and he's going to prison." The matter was rescheduled twice, and each time defendant agreed that both the September 2013 and January 2014 matters would be heard on the rescheduled dates. On January 24, 2014, the trial court expressly asked defendant if he wanted his sentencing on the 2013 case to be put over to the next date and defendant said he did.

On January 31, 2014, without specifically stating that it was also considering whether defendant had violated his *Cruz* waiver, the same judge held a preliminary hearing regarding the January 2014 offenses. Defendant was present and had the opportunity to cross-examine the witnesses, including the victim, who testified defendant attacked and threatened to kill her.[3] The court concluded there was probable cause to believe defendant committed the new offenses related to the January 2014 incident. Although the court did not state that it found defendant in violation of his *Cruz* waiver, when it asked the defense had it "missed anything further on behalf of the defense" before concluding the proceedings, defense counsel said the court had not. The court continued the sentencing on the charges related to the September 2013 offense to the same date calendared for the January 2014 offenses, and defendant consented. Defendant

---

[3] We discuss this attack in more detail, *post*.

4

registered no objection and made no comments related to a hearing or finding on the violation of the *Cruz* waiver.

When defendant was subsequently arraigned on the information involving the 2014 charges, the defense again made no statements concerning a hearing or finding on the *Cruz* waiver on the 2013 matter. The court indicated that matter was on for sentencing, which would be calendared upon conviction or acquittal of the new charges. The 2014 case was set for discovery compliance and trial.

At the discovery compliance hearing, the matter was continued to June 9, 2014, defense counsel noting that they would know what they were going to do concerning the sentencing on the 2013 matter on that date. Again, no mention was made of a hearing or finding on the *Cruz* waiver.

On June 9, 2014, the matter was continued to June 23, 2014, and again, no mention was made of a hearing or finding concerning the *Cruz* waiver. Before adjourning, the court asked counsel to let it know if it looked like the defense would not be prepared to proceed with sentencing on that date.

On June 23, 2014, the court imposed sentence on the September 2013 offense and, consistent with the negotiated agreement, sentenced defendant to five years imprisonment, the upper term for a violation of section 273.5 with a prior. The court also imposed fines, fees, and assessments we discuss *post*. The court had at its disposal the December 3, 2013 probation report. When asked at the beginning of the proceedings whether there was any legal cause judgment should not be pronounced, counsel for defendant stated there was not. Again, no mention was made of a hearing or finding on the *Cruz* waiver.

Defendant did not ask for an updated report and registered no objection to the court considering the December 3, 2013 report. Counsel did explain to the court that defendant failed to enroll in a residential program because, as he had previously explained, defendant was suffering from a medical condition that limited his ability to

5

work and that had subsequently been resolved by surgery. Making a pitch for probation, counsel argued that this was an unusual case because defendant was suffering from a mental condition, i.e., substance abuse issues. He provided the court a certificate indicating defendant had completed an alcohol program in the jail. Referring to the probation report, counsel noted no circumstances in mitigation were listed, but argued that his substance abuse problem was a mitigating circumstance. The prosecutor noted that the plea form indicated that if defendant violated a condition imposed by the court or committed a new offense, his sentence would be five years and further noted that defendant's case was not unusual because defendant had a lengthy history of drug addiction. The court sentenced defendant to five years.

In January 2015, after a jury found defendant guilty of the January 2014 domestic violence offenses, the court held a sentencing hearing on that case. A new probation report was prepared and was considered by the court. At the sentencing hearing, the court also reconsidered but left "as previously stated" the sentence for the conviction on the September 2013 offenses. Including the five year sentence on the instant case, the court sentenced defendant to an aggregate term of 19 years to life.

## DISCUSSION

### I. The Probation Report Contention

In originally sentencing defendant on the 2013 case on June 23, 2014, to the negotiated term of five years, the trial court had at its disposal the probation report dated December 3, 2013. At the time of sentencing, defendant had been in jail the preceding five months. Although defendant never objected to the use of that report, he argues on appeal the probation report was outdated and the trial court erred by relying on it.

A new probation report is necessary only "for sentencing proceedings that occur a significant period of time after the original report was prepared" or if there is an "indication of changed circumstances." (Former Cal. Rules of Court, rule 4.411(c) &

6

Advisory Com. com. foll. rule 4.411.)[4] The Advisory Committee recommended updating reports if more than six months have passed since the previous report was issued.

Here, even if the trial court erred by not ordering a supplemental report a little less than seven months after the original report, when defendant was incarcerated for more than five of those months, we conclude the error was harmless. (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 182.) Such error is reversible only if "there is a reasonable probability of a result more favorable to defendant if not for the error." (*Ibid*.) Here, the result would have been the same even if a supplemental probation report had been prepared. Defendant would have been sentenced to five years in accordance with the negotiated agreement.

As for the efficacy of the December 3, 2013 probation report, we note it detailed defendant's background and other relevant information, including defendant's numerous prior criminal convictions and history of domestic violence offenses. According to the report, defendant "ha[d] no ability to comply with probation." Defendant committed the current offense while on supervised release, and his prior performance on probation and supervised release "was unsatisfactory." The report also detailed multiple circumstances in aggravation, including defendant's history of violent conduct and felony domestic violence convictions in 2008 and 2012 against his former spouse. And because of the multiple prior felony convictions, defendant was presumptively ineligible for probation absent unusual circumstances. (§ 1203, subd. (e)(4); Rule 4.413.)

Defendant argues on appeal that circumstances had changed since the original report, including his completion of a 12-week alcohol treatment program while in jail, and his efforts to attend a residential treatment program, in compliance with his *Cruz*

---

[4] Further rule references are to the California Rules of Court in effect at the time of sentencing.

waiver. However, the trial court was aware of those facts, as defendant's counsel highlighted both of these circumstances at the sentencing hearing.

Defendant also argues the trial court misunderstood the facts of the underlying offense and erroneously conflated the altercations between defendant and the victim on September 6 and 8, 2013. Regardless, the original probation report did not conflate the two altercations, so a supplemental probation report would not have made a difference.

We conclude that a supplemental report would have added little, if anything, to the trial court's analysis of defendant and the nature of his offenses. He was sentenced pursuant to the negotiated agreement. And in any event, the court later had at its disposal a new probation report prepared for the 2015 sentencing when it reconsidered the sentence on the 2013 charges and imposed sentence on the 2014 charges.

For all of these reasons, any error in failing to obtain an updated supplemental report was harmless.

## II. Ineffective Assistance of Counsel

Defendant contends he received ineffective assistance of counsel during the June 2014 and January 2015 sentencing hearings because counsel did not correct the trial court's purported misunderstanding concerning facts related to the commission of the offenses in the September 2013 case and that the agreement was purportedly not for a stipulated upper term. The contention is meritless.

To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692 [80 L.Ed.2d 674] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217 (*Ledesma*).) " 'Surmounting *Strickland's* high bar is never . . . easy.' " (*Harrington v. Richter* (2011) 562 U.S. 86, 89 [178 L.Ed.2d 624, 642] (*Richter*), quoting *Padilla v. Kentucky* (2010) 559 U.S. 356, 371 [176 L.Ed.2d 284, 297].)

To establish prejudice, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' " (*Richter*, *supra*, 562 U.S. at p. 104.) To show prejudice, defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217-218; *People v. Henderson* (2020) 46 Cal.App.5th 533, 549-550.) The likelihood of a different result must be substantial, not just conceivable. (*Richter*, *supra*, U.S. at p. 112.)

## A. Additional Background

On September 6, 2013, defendant beat and threatened to kill the victim. On September 8, 2013, after a lengthy argument, defendant locked the victim out of the house, and she kicked the house door and hit him. Defendant argues that, during the June 2014 sentencing hearing, the trial court described September 6 and 8 as a single event. He claims this erroneously caused the court to conclude that defendant was "blaming the victim," rather than "fess[ing] up to what he had done." Defendant also claims the trial court erroneously stated defendant abused the victim because of his temper and his disposition, rather than because of his alcohol abuse. Defendant contends his counsel should have corrected these factual errors, which were purportedly prejudicial and caused the trial court to not grant probation a second time.

Additionally, defendant contends the trial court "mistakenly believed" defendant had stipulated to the upper term and that defense counsel was ineffective for failing to point this out.

## B. Analysis

Regarding the stipulated term, the plea form initialed and signed by defendant noted in no less than two places on the form that if defendant fails to complete a residential program or violates the *Cruz* waiver conditions, he will be sentenced to five years. During the plea hearing, the court noted that not only would he be sentenced to five years, he would also face 180 days concerning two felonies for which he was on

9

mandatory supervision at the time.[5]  Accordingly, we reject appellate counsel's assertion that trial counsel was ineffective for not informing the trial court the negotiated term of imprisonment was not stipulated.

Moreover, defendant has not established prejudice.  Because defendant had multiple prior felony convictions, he was presumptively ineligible for probation and could only be granted probation if the court found this to be an unusual case.  (§ 1203, subd. (e)(4); Cal. Rule 4.413.)  There was insufficient evidence establishing that the presumption against probation had been overcome and ample evidence of multiple aggravating factors supporting the denial of probation and imposition of the upper term. As previously discussed, defendant had a history of violent conduct and criminal convictions, including prior domestic violence offenses.  (See *People v. Black* (2007) 41 Cal.4th 799, 815 [a single valid factor is enough to justify imposition of an aggravated term].)  The court stated that the five-year upper term "was certainly the only resolution I could have reached, . . . given this first assault on the victim and his previous conduct towards [his previous spouse]."

As such, there is no reasonable probability the sentencing outcome would have been different during either the June 2014 or January 2015 hearings.  We reject defendant's claim of ineffective assistance of counsel.

### III.  The *Cruz* Waiver

Defendant contends the trial court sentenced defendant on the September 2013 case without providing him a hearing concerning the violation of his *Cruz* waiver.  The People contend defendant may not raise his challenges to the *Cruz* waiver hearing, and fees and fines on appeal because he failed to raise them in the trial court, citing *People v. Scott* (1994) 9 Cal.4th 331, 352-354.

---

[5]  It may be that the sentencing on these two matters fell off the court's radar screen.  The record before us does not reflect a sentence on those matters.

10

We note that defendant never questioned whether the preliminary hearing served as an evidentiary hearing on the *Cruz* waiver and never mentioned the need for such a hearing or an express finding on multiple occasions when there were opportunities to do so. Even if defendant has not forfeited the contention and the court only implicitly considered the preliminary hearing for the offenses related to the January 2014 altercation to also be a hearing about defendant's compliance with his *Cruz* waiver, there was no violation of the plea bargain or defendant's due process rights. Defendant indicated in the plea agreement that he "underst[ood] and agree[d] that whether or not there has been a willful violation of [the terms of his *Cruz* waiver] will be decided by the sentencing judge sitting without a jury and that the burden of proof to find a willful violation of the *Cruz* waiver is the very low standard of 'by a preponderance of the evidence.' " (Italics addded.)

It is undisputed that defendant had prior notice of the terms of his *Cruz* waiver, including the prohibition on battering, annoying, threatening, or harassing the victim. In addition, defendant was present and had the opportunity to submit and rebut evidence during the January 2014 preliminary hearing and the subsequent sentencing hearings, when the trial court heard ample evidence that defendant threatened, harassed, and battered the victim in January 2014.

Since defendant was given both notice and the opportunity to be heard, the trial court complied with the plea agreement, and there was no violation of defendant's due process rights. (See *People v. Carr* (2006) 143 Cal.App.4th 786, 791-792 [finding no violation of due process where defendant who allegedly violated a *People v. Vargas* (1990) 223 Cal.App.3d 1107, waiver had ample notice and opportunity to be heard, and noting that a court is not required to make a detailed statement of reasons for finding defendant in violation of a *Vargas* waiver].) Moreover, any error is harmless because the jury in the 2014 matter ultimately found defendant guilty beyond a reasonable doubt and

11

the victimization for which defendant was convicted in the 2014 case provided the basis for finding defendant in violation of the *Cruz* waiver in the 2013 case.

## IV. Fees and Fines

Defendant contends the court imposed fines in violation of his plea agreement. He argues he only agreed to have fines imposed should he receive a grant of probation, and therefore the trial court violated the plea bargain by imposing: a $1,400 restitution fine (§ 1202.4, subd. (b)); a suspended $1,400 parole revocation fine (§ 1202.45); a $500 "domestic violence fee"; a $40 court operations assessment (§ 1465.8); and a $30 conviction assessment (Gov. Code, § 70373). Defendant also argues the trial court had no authority to impose a "domestic violence fee."

The assessments, restitution fine, and parole revocation fines are mandated by statute. (See §§ 1202.4, subd. (b), 1202.45, 1465.8; Gov. Code, § 70373.) Here, the court imposed the statutory amounts for the court operations assessment and conviction assessment. (§ 1465.8; Gov. Code, § 70373.) The court imposed restitution and parole revocation fines of $1400, within the statutory minimum ($300) and maximum ($10,000) range. (§§ 1202.4, subd. (b), 1202.45.)

On the plea form, defendant indicated he understood that fines and fees could be imposed, including restitution, statutory fees, assessments, "other" unspecified amounts, and a parole revocation fine. The form did not specify an amount for any fine, fee, or assessment. The record reflects no indication by the court that fees and fines would not be imposed unless defendant was granted probation. Nor does the record reflect that only the mandatory minimum restitution fines were contemplated as part of the bargain.

A trial court does not violate a plea agreement when it imposes statutorily mandated fines with set amounts, such as the court operations assessment and conviction assessment. (See *People v. Villalobos* (2012) 54 Cal.4th 177, 183; see also § 1465.8; Gov. Code, § 70373.) Further, where, as here, the parties have not agreed to other amounts, a trial court does not violate a plea agreement when it exercises its discretion

12

and sets restitution and parole revocation fine amounts above the statutory minimum. (*Villalobos,* at p. 186 ["where neither the parties nor the trial court has specified the fine amount in the context of a plea bargain, '[t]he restitution fine shall be set at the discretion of the court.' "], quoting § 1202.4, subd. (b)(1).)

With respect to the $500 "domestic violence fee," as noted, defendant agreed in the plea agreement to "other" fines and fees.  Defendant pleaded guilty to former section 273.5, subd. (e)(1), which permits punishment by both a *fine* up to $10,000 and imprisonment.  (Former § 273.5, subd. (e)(1), now § 273.5, subd. (f).)  On the other hand, where a defendant is granted probation, section 1203.097, subd. (a)(5)(A) provides for "[a] minimum payment by the defendant of a *fee* of five hundred dollars ($500) . . . ." (§ 1203.097, subd. (a), italics added.)  Two-thirds of the fee goes to "the domestic violence programs special fund created pursuant to Section 18305 of the Welfare and Institutions Code," and the remaining one-third goes to "the Domestic Violence Restraining Order Reimbursement Fund" and "the Domestic Violence Training and Education Fund."  (§ 1203.097, subds. (a)(5)(B) & (a)(5)(C).)  Because defendant was sentenced to prison, it could not have imposed a *fee* under section 1203.097, subdivision (a).

The trial court referred to the assessment as a "domestic violence *fee*," not a *fine*. Consequently, it seems clear the court did not intend to impose a fine under former 273.5, subd. (e)(1).  We will strike that fee as unauthorized.

In supplemental briefing, defendant asserts the trial court erred by imposing mandatory fees and fines without a showing of ability to pay.  He relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

As noted, the trial court imposed a $1400 restitution fine and a $1400 parole revocation restitution fine.  In the trial court, defendant did not assert an inability to pay more than the mandatory minimum.  Therefore, the contention as to those assessments is forfeited.  (*People v. Avila* (2009) 46 Cal.4th 680, 729; *People v. Lowery* (2020) 43

Cal.App.5th 1046, 1053-1054 ["appellants had a statutory right, and were obligated, to object to the imposition of the restitution fines above the $300 minimum."]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1032-1033.) And because defendant failed to object to the restitution fines, we likewise reject his contention related to the court operations (§ 1465.8, subd. (a)(1)) and criminal conviction assessments (Gov. Code, § 70373). (*Lowery*, at p. 1054.)

Further, even if defendant has not forfeited his inability to pay contention, we would nevertheless reject his contention on appeal, because we join the courts concluding *Dueñas* was wrongly decided and hold that defendant was not entitled to an ability to pay hearing. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055; *People v. Caceres* (2019) 39 Cal.App.5th 917, 923-929.)

### V.  Senate Bill No. 136

### A.  Additional Background and Defendant's Contention

As noted, in sentencing defendant on the 2014 case, the trial court selected the instant case as the base determinate term without making any changes. Including the five year determinate term on this case, the court imposed an aggregate term 19 years to life. Included within the sentence on the 2014 case is a one-year term for a prior prison commitment under section 667.5, subdivision (b).

S.B. 136 became effective January 1, 2020. (Sen. Bill No. 136 (2019-2020 Reg. Sess.) § 1.) It amended 667.5, subdivision (b), to eliminate the one-year prior prison term enhancement for except for convictions on sexually violent offenses defined in Welfare and Institutions Code section 6600, subdivision (b).

Defendant contends under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), S.B. 136 must be applied retroactively to the instant case as it was not final prior to the effective date for the amendment to 667.5, subdivision (b). Recognizing that the 2014 case has

14

long since been final for *Estrada* purposes, defendant argues that the sentence in that case merged with the sentence in this case and since the judgment in this case is not final, *Estrada* still applies. We disagree.

It is true that a status enhancement like a prior prison term enhancement does not attach for to a particular case for purposes of sentencing, but rather is added to the aggregate sentence involving multiple cases. (*People v. Acosta* (2018) 29 Cal.App.5th 19, 21.) Defendant's argument fails, however, because he conflates a merged sentence involving two cases with the separate judgments in those cases. The key date for *Estrada* is the date of final judgment. (*People v. McKenzie* (2020) 9 Cal.5th 40, 44.) "In a criminal case, judgment is rendered when the trial court orally pronounces sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) For *Estrada* purposes, "[a] judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari with the United States Supreme Court have expired." (*People v. Buycks* (2018) 5 Cal.5th 857, 876, fn. 5.) Thus, while the judgment in this case was not final before the effective date of S.B. 136, the judgment in the 2014 case has long since been final.[6] And because that judgment is final, *Estrada* does not apply here. Accordingly, we decline to strike the one-year term imposed under section 667.5, subdivision (b).

## VI. Mental Health Diversion

Defendant asserts that he suffers from post-traumatic stress disorder and alcoholism.[7] He argues he is eligible for mental health diversion, an ameliorative

---

[6] The judgment in the 2014 case was affirmed on May 10, 2016 and the remittitur was issued on August 11, 2016. (*People v. Watson*, C078754, 2016 WL 2765094 (*Watson*).) We take judicial notice of the appellate opinion in the 2014 case. (Evid. Code, § 452, subd. (d)(1).)

[7] The December 3, 2013 probation report states that defendant reported he had been treated for post-traumatic stress disorder that resulted from his father putting a gun to his

provision enacted in Assembly Bill No. 1810, which became effective January 1, 2019. (Stats. 2018, Assem. Bill No. 1810 (Reg. Sess. 2017-2018) ch. 1005, § 1 (A.B. 1810).) A.B. 1810 established mental health diversion in section 1001.36. Relying on *People v. Frahs* (2020) 9 Cal.5th 618, defendant asserts A.B. 1810 must be applied retroactively to him. On the facts of this case, we conclude remand for the purpose of considering mental health diversion would be futile.

Mental health diversion under section 1001.36 provides discretionary pretrial diversion for qualifying defendants with mental health disorders who could benefit from inpatient or outpatient community treatment. (§ 1001.36, subd. (b)/(c)(1).) Defendant is serving a life term on the 2014 case, so a trial court could not grant mental health diversion into a community treatment program on this case.

Moreover, from our review of the record in this case and this court's opinion in the 2014 case, it would be an abuse of discretion to grant mental health diversion because defendant clearly does not satisfy subdivision (b)(1)(F) of section 1001.36. Section 1001.36, subdivision (b) sets forth certain criteria a defendant must satisfy to be qualify for mental health diversion. Subdivision (b)(1)(F) requires the trial court to find "that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." Among the things a trial court can consider are the "defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." Unreasonable risk of danger to public safety is defined in section 1170.18 as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Section 667(e)(2)(C)(iv) includes any homicide or attempted homicide offense.

---

face in 1998 when he was sixteen years old. Defendant told he probation officer he had not been treated for mental or emotional problems as an adult.

As set forth in the opinion from the appeal on the 2014 case for which we have taken judicial notice (see fn. 6, *ante*), the events in that case clearly disqualify defendant. Those events began when defendant was talking to his mother over the phone about the 2013 case. Defendant told his mother, " 'if we didn't fix this, that he was going to kill us.' " (*Watson*, *supra*, 2016 WL 2765094, *1.) Defendant then hung up and threw the phone at the victim. Thereafter, "[d]efendant followed her and punched her in the face four or five times, and when she fell to the ground, he told her not to get up. She tried to get up, so defendant shoved her into the refrigerator and, taking hold of her hair, slammed her head into the floor. She grabbed a spatula and hit defendant, causing him to let go of her momentarily and call his mother. Defendant got hold of his wife again and told his mother he was '*going to kill us*.' [The victim] begged in the background for his mother to call the police." (*Ibid*., italics added.) When the children began to scream, the victim went to their room to calm them. With their two-year old daughter in her arms, defendant hit the victim on the head, knocking her to the bed. When she grabbed the phone to call 911, defendant repeatedly punched her in the face. Defendant continued to beat her when a friend came in and tried to intercede, telling the victim " '*You're dead*.' " (*Ibid*., italics added.) When the friend left with the daughter, defendant walked outside to the front porch. Meanwhile, the victim locked the front door. Defendant kicked the door in, threw the victim to the ground, and began hitting her with a posthole digger. He then grabbed an aluminum pole and hit the victim on the head with it multiple times and stopped when the police arrived. Defendant was found guilty of multiple crimes, including torture.

At the January 15, 2015 sentencing hearing, the court remarked about defendant's conduct in this case, specifically the blow that was inflicted when defendant struck the victim while she was holding their baby daughter. The court stated: "To me, that's for a sadistic purpose. He's using her like a punching bag. She is defenseless. She's holding the baby. And then I reviewed the evidence, and that's where she got 16 stitches in the facial or the head area." The court also noted that this was defendant's fifth domestic

17

violence related offense.  We conclude it would be an abuse of discretion to find that defendant does not present an unreasonable risk to public safety as defined in section 1170.18.

Based on the record before us, we conclude remand for purposes of mental health diversion would be futile.

## DISPOSITION

The judgment is modified to strike the $500 "domestic violence fee."  The trial court is directed to amend the abstract of judgment accordingly and forward a copy the Department of the Corrections and Rehabilitation.  The judgment is otherwise affirmed.


　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　MURRAY, J.


We concur:


　　　／s／
HULL, Acting P. J.


　　　／s／
RENNER, J.

18